# THE STATE v. FORSHA, Appellant.

### Division Two, July 3, 1905.

1. **INFORMATION: Verification: Jurat: Failure to Affix Seal.**
The failure of the clerk of the court to affix the seal of the court
to the clerk's jurat does not invalidate the verification of the
information. While the seal is in the nature of an attestation
of the genuineness of the clerk's signature, yet the court is pre-
sumed to know the signature of the clerk, and the affixing of
the seal is not an indispensable requisite to the jurat.

2. **JUROR: Challenge on Voir Dire: Insufficient.** The mere ob-
jection, "challenged for cause," to jurors upon their *voir dire*
examination, is not sufficient to preserve for review error al-
leged to have been committed in retaining such jurors. The
grounds of challenge must be specifically stated.

3. ————: **Opinion: Competency.** A person is not disqualified as
a juror by reason of having formed and expressed opinions as
to the guilt or innocence of the accused derived from rumor or
newspaper accounts, if he states on his *voir dire* that he can give
the defendant a fair and impartial trial upon the evidence.

4. **EVIDENCE: Contradicting Witness: Statements of Co-Indictee.**
Defendant and one Bailey and another were jointly charged
with the murder of a non-union hack-driver. At the trial de-
fendant called Bailey, who had been previously convicted, as a
witness, and on his cross-examination he was asked if one
Cooper had not, on the day after the homicide, said in his pres-
ence, "The strikers could not expect to win as long as they were
using violence and shooting people; they will get public senti-
ment down on them;" and if he had not replied, "That is the only
way to win"—and this he denied. *Held*, that, Bailey being the
principal actor in the commission of the homicide, his statement
to Cooper was material, as tending to refute the theory that
the killing was done in self-defense, and being so, the State had
the right to contradict him by the testimony of Cooper.

5. ————: **Conclusion of Witness.** Where defendant's co-inditee
had testified for defendant in regard to the homicide, and had
denied that defendant had said anything to him about killing
the deceased, or that there was any agreement or understanding
that any violence was to be done, it was not error to refuse
to permit the witness to answer a question as to whether he
was actuated by anything that defendant said or did. His
answer would have been nothing more than a conclusion from
the facts which it was the province of the jury to draw.

6. ————: **Witness: Credibility: Previous Offense.** The State, in order to affect the credibility of a witness called by defendant, had the right to inquire of him if he had not been previously convicted of a criminal offense. And where he admits that he had pleaded guilty to a common assault, it was not error to permit the State to show by the record that the witness had pleaded guilty to a charge of an assault with intent to kill.

7. ————: **Objected to as Incompetent: Too Late.** Where the testimony of witnesses has been admitted without objection or exception, it is then too late to object to it as incompetent by a motion to strike it out.

8. **DEFENDANT AS WITNESS: Surrebuttal.** Where a defendant rests his case in chief without being introduced as a witness, the court properly confines his testimony to rebuttal of the rebuttal testimony introduced by the State. And in such case an objection to defendant's testifying as to matters which should have been introduced in chief, is properly sustained.

9. **INSTRUCTION: Withdrawing From Difficulty.** Where the evidence shows that defendant by his words and actions aided in the commencement of the difficulty, and by his conduct assisted in bringing the principal actors into combat, an instruction is properly refused which tells the jury they should find defendant not guilty if they believed he in good faith withdrew or attempted to withdraw from the difficulty.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*W. F. Riggs* for appellant.

(1) The court erred in not sustaining the motion to quash because the information is not legally verified, the purported affidavit being without venue and without seal. Barhydt v. Alexander, 59 Mo. App. 192. (2) The court erred in holding that jurors Shaw, Ryan, Bell and Duncan were qualified jurors. "If a juror have an opinion as to the guilt or innocence of the accused, not based solely on rumor and newspaper reports, so fixed as to require evidence to remove it, he is not competent, al-

though he may believe that he can render a fair and impartial verdict on the evidence." Jackson v. State, 77 Ala. 18; Polk v. State, 45 Ark. 165; Andrews v. State, 21 Fla. 598; State v. Miller, 29 Kan. 43; State v. Ricks, 32 La. Ann. 1098; Stephens v. People, 38 Mich. 739; Olive v. State, 11 Neb. 1; People v. Casey, 96 N. Y. 376; McHugh v. State, 38 Ohio St. 153; Rothschild v. State, 7 Tex. App. 519; State v. Culler, 82 Mo. 623; State v. Foley, 144 Mo. 600; Dejarnette v. Com., 75 Va. 867. (3) The statute (sec. 4680, R. S. 1899), refers to "convictions," and if conviction of common assault is less reflective than assault to kill and murder, which is for the jury, then the error is patent. (4) A confession is a voluntary admission or declaration by a person of his participation in a crime committed, and must be inculpatory in its nature. 6 Am. and Eng. Ency. Law (2 Ed.), 521. The confession must be of the criminal act itself, and not the admission of facts tending to establish guilt. A confession to be given in evidence must be of the offense charged. 6 Am. and Eng Ency. Law (2 Ed.), 568. If Forsha may be convicted on Bailey's opinion as to how to win strikes, then every member of the union may be likewise convicted. The rule is the same whether Forsha be considered as a co-defendant or co-conspirator. 6 Am. and Eng. Ency. Law (2 Ed.), 571. (5) Both the question propounded to Bailey and the question propounded to Cooper were properly objected to, and exceptions duly saved. In State v. Kennedy, 177 Mo. 98, this court said: "Nothing said or done by one conspirator after the crime is accomplished is admissible against another in proof." State v. Walker, 98 Mo. 95; State v. McGee, 81 Iowa 17. (6) The court erred in refusing instruction 8, requested by defendant. 1 Am. and Eng. Ency. Law (2 Ed.), 262, 389.

*Herbert S. Hadley,* Attorney-General, and *North T. Gentry,* Assistant Attorney-General, for the State.

(1)   There is no merit in appellant's suggestion that the seal of the court was not affixed to the jurat of the clerk, attached to the information.   The trial court will take judicial notice of the clerk's signature, and is presumed (when a motion to quash is filed) to know said clerk's signature.   State v.   Pfenninger, 76 Mo. App. 313; Finn v. Rose, 12 Iowa 565; Mountjoy v. State, 78 Ind. 172; Meriam v. Coffee, 16 Neb. 450; Rosenstein v. State, 9 Ind. 290; Simon v. Setter, 25 Kan. 155; Crombie v. Little, 47 Minn. 581.   (2)   No error was committed in allowing Shaw, Duncan, Bell and Ryan to remain on the panel of forty.   Defendant's objection to them was general and not specific.   "Challenging a juror for cause is insufficient, unless the ground of the challenge is distinctly specified."   State v. Evans, 161 Mo. 95; State v. Taylor, 134 Mo. 109; State v. McGinnis, 158 Mo. 105; State v. Albright, 144 Mo. 368; State v. Reed, 137 Mo. 125.   (3)   No error was committed in overruling defendant's motion to strike out the testimony of the State's witness Ferguson.   All of his evidence went in without objection and it was too late to complain afterwards.   "A party can not speculate upon the effect of evidence which is objectionable upon its face, and then complain of a refusal to reject it later on in the trial."   State v. McAfee, 148 Mo. 379; Roe v. Bank, 167 Mo. 426.   (4)   The evidence of everything done by the defendant and his co-conspirators on the evening of this tragedy was admissible. It was not only a part of the *res gestae,* but it tended to show the intent. State v. Walker, 98 Mo. 95; State v. Lockett, 168 Mo. 680.   (5)   The fact that the defendant was running away at the time some of the shots were fired by Bailey does not excuse defendant nor relieve him of the evil results of the conspiracy.   (6)   No error was committed in permitting the State to ask witness Moon if he

had been convicted of an assault with intent to kill. On his refusal to answer the question, defendant's attorney then asked him if he did not plead guilty to common assault, and he replied that he did. It was proper then to permit the State to introduce the clerk of the criminal court and identify the information (which charged an assault with intent to kill), and also prove that this defendant entered a plea of guilty thereto. It was admissible for the purpose of discrediting the witness. State v. Howard, 102 Mo. 142; State v. Blitz, 171 Mo. 530. (7) It was clearly competent to ask defendant's witness Bailey what he said the next morning in the presence of Cooper at a registration place in regard to the shooting of Ferguson. True the statement to witness Cooper was made in the absence of the defendant, and after the shooting of Ferguson. But most any contradictory statement made by a witness is made in the absence of the defendant. It would be the heighth of absurdity to argue that a witness could not be impeached no matter how contradictory the statement, unless he made that statement in the presence of the defendant. State v. Hughes, 71 Mo. 633. (8) No error was committed in rejecting the testimony of defendant's witness Bailey that, in shooting Ferguson, he (Bailey) was not actuated by anything that defendant said and did. Such a question called for the opinion and conclusion of the witness and invaded the province of the jury. White v. Maxey, 64 Mo. 552. (9) It was competent for the State, in rebuttal, to impeach defendant's witness Bailey by proving that his general reputation for morality was bad. State v. Day, 100 Mo. 242; State v. Raven, 115 Mo. 419. (10) After defendant had closed his case, and after the State had closed in rebuttal, defendant, for the first time, took the witness stand. He was permitted by the court to testify only to matters in rebuttal. This was a correct ruling; otherwise, there would be no end of criminal trials. (11) The State's instructions were

correct and fairly · submitted the issues to the jury. They have been repeatedly approved. State v. May, 172 Mo. 630; State v. Kilgon, 70 Mo. 546; State v. Thomas, 78 Mo. 327.

FOX, J.—On the 19th day of April, 1904, there was filed in the criminal court of Jackson county, Missouri, by the prosecuting attorney thereof, an information against Edgar G. Bailey, James Forsha and William Moon, jointly charging them with the crime of murder in the first degree; it being alleged in the information that the parties named killed Albert Ferguson upon the 19th day of March, 1904, in Jackson county by shooting him with a pistol. Upon application of the defendant, the court granted a severance and the State elected to try Edgar G. Bailey first. His trial began on the 27th day of June and ended the second day of July, and his conviction of murder of the first degree was affirmed by this court. [State v. Bailey, *ante,* 257.] The State elected to try James Forsha next and his trial began upon the 18th day of July, at the April term of the criminal court of Jackson county, and ended upon the 23d day of July, 1904, resulting in a conviction of murder in the second degree, and a sentence of eighteen years· in the state penitentiary. The evidence in the case offered by the State and the defendant was substantially as follows:

In the month of March, 1904, there was a strike in Kansas City, Missouri, on the part of the Hack Drivers' Union against the hack companies in an effort to compel them to employ only union men. The defendant Forsha was a member of the union and he, Bailey and Moon (both of whom are also members of the union) were taking an active part in the strike. The headquarters of the Hack Drivers' Union was located on Central street, a little to the north of 9th street, and for two weeks prior to the date of the homicide, Bailey had been living with a woman by the name of Gertrude

Biggs at the Thelma hotel at the corner of 9th and Central, and the room in this hotel occupied by Bailey and Mrs. Biggs, and the saloon that was located therein, seem to have been a place of rendezvous for Bailey, Forsha and Moon, and from which upon the night of the homicide they started out. By the 18th of March the feeling engendered by the strike had become so pronounced that the defendant and his associates seemed to have determined upon a course of violence in order to accomplish the purpose of the strike, and this determination appeared in evidence from the statement shown to have been made by the defendant and his associates, in which non-union hack-drivers were referred to as "scabs," such designation being further emphasized by the use of vile epithets, accompanied by threats of death or bodily harm. On the night of the 18th of March, 1904, the defendant, Bailey, Moon and Mrs. Biggs were together at Labor Headquarters just north of the Thelma hotel. From there they went in a hack driven by one W. E. Ferguson, who was a union hack driver, to a saloon kept by one O'Flaherty upon South Main street. After drinking awhile at this saloon, the Biggs woman ordered a hack by telephone, of the Walnut Street Livery Company, a hack company employing non-union hack-drivers, to come to 1625 Main street, which was a house of prostitution. After ordering this hack, it being directed to come to the house of prostitution so as not to excite suspicion as to the purpose of the call, the defendant, Bailey, Moon and Mrs. Biggs, went to the house of ill-repute and when the hack arrived they entered it and ordered the driver, whose name was Andrew Meyers, to take them to a road-house at Twenty-ninth and Southwest boulevard. They stopped, however, on the way at Broadway and Southwest boulevard at a saloon, at which place they had the hack-driver bring them out a round of drinks. When they arrived at the roadhouse at Twenty-ninth and Southwest boulevard, Meyers, the hack-driver, was

invited to go into the road-house by Moon, who helped
him hitch his team. After they entered the road-house
Meyers was invited to take a drink with the party who
were standing in front of the bar.   While they were
standing, there, Bailey asked Meyers what it was that
he had on his coat and if he had a pistol.  Meyers told
them that he had a star as a special officer, and that he
had a pistol in order to protect himself and his passen-
gers.   At that Bailey jerked the star from Meyer's
coat, passed it to Moon who handed it to Forsha.   As
Meyers was starting to take the star from Forsha, who
was pretending to return it, Bailey drew his pistol up-
on Meyers, threatening to kill him if he took the star
or put it on again, and at that Meyers received two
blows on the head, delivered from behind.   Moon grab-
bed him around the neck, while Bailey took his pistol
and Forsha took from him his cartridge belt.   Forsha
began beating Meyers over the head with the cartridge
belt and he fell to the floor unconscious.   When the
hack-driver regained consciousness, he tried to run
from the room, but Forsha struck at him again with the
cartridge belt, which was filled with cartridges, and
Meyers dodged to avoid the blow and Moon then struck
him, knocking him to his knees upon the floor; at that
Bailey fired at Meyers, failing, however, to hit him, and
Meyers regained his feet and ran from the road house.
Bailey followed him from the road house, and while he
was partially dazed from his previous blows and par-
tially blinded by blood flowing from his wounds, Bailey
struck him twice over the head with a pistol, felling
him again to the ground and rendering him again un-
conscious.   While Meyers was being disarmed and
beaten up in the road house saloon, he kept begging for
mercy, saying to his assailants, ''Please don't shoot
me; please don't hurt me; I will go away and you won't
have me to pay me for your hack fare.''   The answer
these three men gave to these supplications for mercy
were the assaults that have been described, accompani-

ed by vile epithets which they applied to the hack-driver. Leaving Meyers unconscious and covered with blood, in the road house yard, the party of four separated, Bailey and the Biggs woman leaving together, and Moon and Forsha together. They met, however, about a block from the road house, where, in discussion of the assault, they expressed the opinion that they had killed Meyers. Fearing that they might be arrested, they again separated, but were soon together again at the Thelma hotel. Bailey and Mrs. Biggs arrived there first and went up to their room. Bailey, after wiping the blood from the non-union hack-driver's pistol, secreted it and one which he himself carried, behind the radiator in their room. They then went down stairs to the saloon, where with Forsha and Moon, as usual, a round of drinks was ordered. While in the saloon, at the request of Bailey, Mrs. Biggs went upstairs and got the pistol which had been taken from Meyers and gave it to Bailey, who in turn handed it to the bartender. The circumstances of the assault were then gone over in the presence and hearing of the bartender, each one telling his part in the assault. Bailey stated that he believed that he had killed the hack-driver, to which remark Forsha made reply by saying that if he did not "kill him he ought to have done so." After having remained in the saloon for sometime, Mrs. Biggs went upstairs to go to bed, but at the request of Bailey she dressed herself and came back down stairs and the four then went to Labor Headquarters, where the three men discussed the question as to what carriage company they would be most likely to get a driver from whom they could beat up with impunity. Bailey suggested the Depot Carriage & Baggage Company, but Forsha objected to this company as the men that they employed would not, he contended, be as easily beat up as the man that they had at the road-house. At Moon's suggestion, a hack-driver was called from the Landis Livery Company, and notified to be at the

Coates House in half an hour. This occurred in the neighborhood of half past two o'clock. When the party left Labor Headquarters, Bailey told Mrs. Biggs to go up stairs in their room in the Thelma hotel and get his revolver. To this Mrs. Biggs objected, telling Bailey that he should not have his pistol, that she had the key to the room and would not give it up; that he, Bailey, was drinking too much, and that they had gotten into enough trouble for one evening. Bailey replied that he wanted a pistol as he was going to get another son-of-a-bitch before morning. Forsha then told Bailey to go in the saloon and get the revolver he had given to the bartender. Bailey went into the saloon and secured the revolver from the bartender. The party went up to the Coates House, and when the hack arrived, Forsha directed the driver, who was Albert Ferguson, the deceased, to drive them to Fifteenth and Central, this place having been agreed upon on the way to the Coates House at the suggestion of Forsha that it was a dark place, suitable for beating up non-union hack-drivers. As they were riding from the Coates House to Fifteenth and Central, a plan of action was agreed upon when they should arrive at the point of destination. It was agreed that Forsha and Moon should get out of the hack and grab Ferguson, the hack-driver, and then he was to be beaten up as Meyers had been served earlier in the night. Bailey added prophetically that if the hack-driver "started anything" he would kill him. Bailey was carrying his pistol in his hand. The plan of action decided upon seemed to be that, if Ferguson, when seized and disarmed, quietly submitted to being "beat up" by these three men, at this lonely place at this hour of the morning, then they would be satisfied; but if he should attempt to "start anything," that is, to defend himself, then he was to be killed. When the hack arrived at Fifteenth and Cen-

tral, it stopped near the northeast corner, Ferguson, the driver, opened the door and Forsha stepped out, quickly followed by Moon and the two grappled with the driver. As soon as Bailey got out of the hack Forsha standing on the corner said: "Shoot him; shoot him; kill the son-of-a-bitch," and then he and Moon ran east on Fifteenth street. Mrs. Biggs had immediately followed Bailey out of the hack and started to run east on Fifteenth street, preceded by Forsha and Moon. Bailey and Ferguson were at that time in the rear of the hack. When the Biggs woman had gone about a half block she heard a shot, followed by the cry from Ferguson, "Help, help, O, my God, I am shot." This cry was immediately followed by another shot and then in a short interval a number of shots were fired. Bailey, leaving the scene of the murderous assault, ran in the direction of his associates, overtaking them at the first corner east on Fifteenth street, where he said that he thought that he had killed the son-of-a-bitch and that they must "run like hell," or they would get caught. It was agreed that they should scatter; Moon and Forsha going in one direction and Bailey and the woman in another. The party of four, however, went to the Thelma hotel according to agreement, where they met at Bailey's room. There they proceeded to coolly discuss the incidents of the homicide, Forsha relating how he had hit the deceased with a pair of brass knucks and that it "didn't seem to daze him." Moon told how he hit him and Bailey said deceased had put up "a hell of a fight," but that he "thought he had killed him," and Moon added that "if he did not he ought to." Forsha exhibited a bruise on the jaw he had received in the fight and told how he had left the cartridge belt, a knife and a pair of brass knucks at a saloon upon Ninth street. Forsha and Moon soon left the hotel after having another round of drinks at the saloon.

Ferguson was taken from the place of the homicide to the police station, from which place he was

taken to the German Hospital, where he made a dying declaration to the assistant   prosecuting attorney, A. S. Lyman, which is as follows:

"March 19, 1904.

· "I, Al. Ferguson, now at the German Hospital, believing that I am about to die, and having no hope of recovery, do make the following statement of the facts leading up to my being shot and wounded this morning at about three o'clock:

"This morning, shortly before 3 a. m., we got a call from the Coates House.    Went there, and took three men, and a man dressed in woman's clothes into my hack.   They wanted me to drive them to Fifteenth and Central street.   I drove there and got down to let them out.   I opened the hack door.   I found that the man had removed his woman's clothes and there were four men there.   As they got out they began to attack me. I defended myself as best as I could.   The third man who got out of the hack shot me in the abdomen. He was a  medium-sized man, with black hair.   The first man who got out of the hack said to me, 'We have got you, you son-of-a-bitch, what are you going to do now?'   After the third man shot me, they all ran away. I did not know any of them.

his

"Al.   X   Ferguson."

mark.

"Witnesses —

    A. S. Lyman,

    Dr. E. L. Stewart."

At the hospital, Ferguson was operated on by a physician in the vain hope of saving his life, but the next day he  died.    The  fatal wound  received  by Ferguson was from a bullet which entered the abdomen three inches below and two, inches to the right of the navel, taking a  downward,  backward  and  outward course, perforating the bowels and lodging under the spine at a point about two and one-half inches below

the brim of the hip, and three inches in front of the spinal column. A number of people who resided near Fifteenth and Central, that neighborhood being a residence and not a business section of the town, testified to being awakened by the shots and cries of the deceased. Their testimony agrees upon the proposition that there were two series of shots, between which there was a slight interval, and that the cries for help which they heard immediately followed the first shot. The testimony of the witness which was of most importance, was that of William A. Satterlee, assistant general manager of the Metropolitan Street Railway Company, who resided at 221 West Fifteenth street, and who testified that he was awakened by the first shot, went to his window and saw a man stand at the northeast corner of Fifteenth and Central and fire two or three shots in a westerly direction, and then turn and run east on Fifteenth street. Before these shots were fired, during the firing and afterwards, he heard the cries for help.

The evidence in behalf of the defendant consisted of the testimony of Bailey and Moon and that given by three painters who were working in the county jail on the date before the trial, and claimed to have heard Mrs. Biggs say that a representative of the State had told her father, her lawyer and herself that if she testified against Forsha she would get out of jail, but if she didn't she would get ten years in the penitentiary, and that she had also said if the sons-of-bitches didn't treat her right they would not get any evidence out of her.

Bailey, testifying in behalf of his associate, Forsha, stated that they, Forsha, Moon, Mrs. Biggs and himself, had been at Labor Headquarters some fifteen or twenty minutes before Moon had called the hack from the Landis Company, and that Forsha had not said anything in regard to a hack prior to that time; that on the way from the Coates House to Fifteenth and Central, Forsha had called to the driver when he

was going in the wrong direction, asking if he didn't know the way to Fifteenth and Central, saying that he ought to know as he had "scabbed long enough;" that to this remark Ferguson made reply by some muttered curses; that when the hack arrived at Fifteenth and Central, Ferguson, with a revolver in his hand, opened the door and said, "Get out of here you union bastards;" that Forsha then got out of the door and was promptly knocked down by Ferguson; that Moon following dodged a blow, and that as he himself got out of the hack Ferguson shot at him, the bullet passing by his head; that he was in such position that he could not run, and so he grappled with the hack-driver who fired again, the bullet passing through his clothing and grazing his stomach, making him think that he was shot; that then he threw Ferguson from him and the latter thereupon drew his gun over the wheel of the hack and at that, "I jerked my gun and commenced to shoot and he done the same." He denied that Forsha said anything to him as he got out of the hack, and claimed that at the time the shooting had begun Forsha and Moon were running away. He also testified that there was nothing said at Headquarters, or on the way to Fifteenth and Central, about shooting anybody; that he and the balance of the party were all under the influence of liquor, and while in the hack were "jollying back and forth" and singing "Bedelia." On cross-examination he admitted that he did get the revolver which he had given to Robinson, the bartender, before he left the saloon, but was not positive whether Forsha was present at the time or not. He denied having sent Mrs. Biggs up to the room to get the revolver which he afterwards gave to the bartender, claiming that he had given it to him "in a drunken way." He stated that Fifteenth and Central had been selected as the destination of their hack ride on the impulse of the moment, and that their intention in having a non-union hack-driver drive them there was "to give him a bogus

call, then get out and walk away, because they [non-union hack-drivers] had been in the habit of sending us on bogus calls;'' that he knew the driver of this hack was a non-union man and to give him a ''bogus call'' was the sole  purpose of the  ride.  Witness  further testified that he was not a member of the ''wrecking crew'' of the Hack Driver's Union; he admitted that upon Monday after the homicide he moved from the Thelma hotel to Hasbrook Place, and did not give his name at his new location, but claims that he did not remain there in hiding; that he stayed close to his room because he felt bad over the ''difficulty;'' he declined to answer as to what statements he made to the officers when arrested, but admitted that he had given Mrs. Biggs money to leave town on, but denied that it was at his suggestion that she left.   Bailey stated that he had' hold of Ferguson's hand in which the latter had his revolver when the second shot was fired, but could point out no powder burns upon the clothing which he claimed to have had on at the time and which he exhibited in court; he further stated that the deceased did not begin to cry for help until he, Bailey, had started to run away from the scene of the homicide; he declined to state what he did with the pistol with which he had shot Ferguson, and declined to answer as to where it then was.

Moon, called as a witness by the defendant, was instructed by the court that as he had not yet been tried, it was his right and privilege to refuse to answer any question that he might think would tend to incriminate him.   Under that admonition he testified, in substance, as follows:  That he was twenty-four years old and a native of Missouri; a hack-driver by profession; that he was at Fifteenth and Central on the morning of the 19th of March in a hack in company with the defendant, Bailey and Gertrude Biggs; that when the hack came to a stop the hack-driver got down with a pistol in his hand and said, "Get out of here, you union bas-

tards, as I am ready for you." That thereupon Forsha got out of the hack and that the driver with his left hand knocked Forsha to his knees; that witness following Forsha out of the hack was struck at by the driver and thereupon he and Forsha both ran away; that they said nothing to the hack-driver or to Bailey; that when they reached the corner of Fifteenth and Wyandotte they heard some shots fired; witness stated that he himself had called the hack without any suggestion from Forsha; that on the way to Fifteenth and Central the driver had gotten off his course; that Forsha had said to him that he had been "scabbing" long enough to know the way to Fifteenth and Central, to which the driver replied by saying, "I am next to you, you union bastard," and continued mumbling up to Fifteenth street, and was angry when he opened the door; that Forsha made no threats against Ferguson. On cross-examination he stated that their only purpose in going to Fifteenth and Central was to give the driver a "bogus call," that there was no talk between Forsha, Bailey and himself as to what they were going to do to the hackman. He stated that when he and Forsha were arrested they had denied to the chief of police being connected in any way with the homicide.

This constituted the testimony in behalf of the defendant.

Upon rebuttal, John Hayes, chief of police of Kansas City, testified that upon the 16th of April, Bailey, Moon and Forsha were arrested and brought to police headquarters; that Moon and Forsha there made a written statement in reference to the homicide, which was signed by each; that at first Forsha had denied any knowledge of the affair, but that afterwards, on Bailey's telling him, Forsha, that he, Bailey, had "told everything," Forsha then said, "I will admit I was out there. We took him out there for a damn good licking, to slug him."

A portion of the written statement of Moon, to

which his attention was called and in which he said, ''I had not got over twenty feet when I heard a shot, then three or four shots fired afterwards,'' was then admitted without objection.

The written statement of Forsha was then offered in evidence, over the objection and exception of the defendant on the ground that the same was not rebuttal and incompetent, irrelevant and immaterial. The written statement is as follows:

''Kansas City, Mo., April 16th, 1904.

"My name is James Forsha. I room at 212 West Seventh street. On the morning of the 19th day of March, 1904, Moon, Bailey, Mrs. Biggs and I got into a hack at the Coates House and drove to Fifteenth and Central street; I don't remember who it was that told the driver to go to that place. When we got there the driver got down off the hack, he had a pistol in his hand, and opened the door. I was the first one to get out, and as I was getting out the driver struck me on the chin with a pair of brass knucks, he knocked me to the ground. When I got up the shooting was going on, after he knocked me down there was a shot fired. After I got up I started away and when I got near Fourteenth and Central I heard four or five shots fired. Bailey told me he had shot the driver; I did not see the shooting. We had the driver go to Fifteenth and Central because it was our intention to beat him up; we did not intend to do him great harm. I make this statement because it is the truth, without fear or promise of reward.

''JAMES FORSHA.''

Moon, recalled to the witness stand, denied, after stating again that the purpose of the hack ride was entinely an innocent one, that the linings of Ferguson's hack was torn and cut by him and his associates. On examination by the defendant's counsel, he testified that he had pleaded guilty in the criminal court of Jackson county to a charge of common assault, served a sen-

tence in jail and had been paroled by Judge Wofford. In rebuttal of this last statement of Moon's, the State offered in evidence an information filed in the criminal court of Jackson county, Missouri, at the January term, 1902, by the then prosecuting attorney of Jackson county, charging William Moon with felonious assault, and to which he had pleaded guilty.

E. Landis testified that he was the owner of the hack that Ferguson was driving at the time of the homicide; that he had seen it about twelve o'clock midnight March the 18th, and a few minutes after the killing, and that the lining was then all cut and was torn, but that there was no bullet holes in the hack, the only damage being to the inside. He further testified that Ferguson was a man about five feet seven inches tall, weighing about 140 pounds, and that he had a crippled hand. That he, the witness, had given Ferguson a loaded pistol in order to defend himself from the assaults that might be made upon him by union hack-drivers.

Mrs. Biggs, called again to the stand, described how Forsha, Moon and Bailey had torn and cut the lining of the hacks in which they had ridden to the road house on Southwest boulevard and to Fifteenth and Central.

Bailey, re-called for further examination, denied that on March 19th, at the registration booth, where he was serving as judge of registration, he replied to a remark made by one L. R. Cooper, "the strikers can never expect to win as long as they are using violence and shooting people," by saying "that is the only way to win."

L. R. Cooper, called to the stand, testified that on the 19th of March, he had said in Bailey's presence, "the strikers could never expect to win as long as they are using violence and shooting people, they will get public sentiment down on them," and that Bailey made reply, "that is the only way to win."

The witness Cooper, David Buck, an ice dealer in

Kansas City, and John L. Huntsman, a member of the police force, testified that they were acquainted with the general reputation for moral character of Edgar Bailey in the community in which he lived, and that it was bad.

Matt S. Kinney, a detective, testified that after the defendant Forsha was arrested he told him, the witness, that he had given to a bartender on Ninth street the cartridge belt that he had taken from Meyers, and also his knife.

After the close of the testimony in rebuttal by the State, the defendant was sworn as a witness. As numerous complaints are made at the action of the court in respect to the examination of this witness, his testimony will be fully stated and considered during the course of the opinion.

At the close of the evidence the court fully and fairly instructed the jury as follows:

"1. The information in this case was filed by the prosecuting attorney on the 19th day of April, 1904, and charges the defendant with murder in the first degree.

"Murder in the first degree is the willful, felonious, deliberate and premeditated killing of a human being with malice aforethought.

"Murder in the second degree has all the elements of murder in the first degree except that of deliberation.

"As used in these instructions the word wilful means intentional, not accidental.

"Felonious means wickedly and against the admonition of the law, unlawfully.

"Deliberately means in a cool state of the blood, it does not mean brooded over, considered, reflected upon for a week, a day on an hour, but it means an intent to kill, executed by a party not under the influence of a violent passion suddenly aroused by some just or lawful cause of provocation to passion, but in the further-

ance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful act, and the passion here referred to is that only which is produced by what the law recognizes as a just or lawful cause of provocation to passion.

"Premeditated means thought of beforehand for any length of time, no matter how short the time.

"Malice, as used in these instructions, signifies a condition of the mind void of social duty and fatally bent on mischief, or, unlawful intention to kill or do some great bodily harm to another without just cause or excuse.

"Aforethought means thought of beforehand.

"In defining the words 'just or lawful cause of provocation,' as used in these instructions, the court instructs the jury that opprobrious epithets or insulting gestures when applied to a person constitute a just cause of provocation to passion, and if the person to whom they are applied is thereby aroused to a sudden heat of passion, and before such passion has had time to cool with a deadly weapon kills the person who applies such approbrious epithets or gestures to him, then such killing is done without deliberation, and a homicide committed under such circumstances is murder in the second degree.

"The court instructs the jury that an assault made upon the defendant constitutes a lawful cause of provocation to passion, and where a homicide is committed with a deadly weapon in a heat of passion suddenly aroused by an assault, and before such heat of passion has had time to cool the defendant kills the person making such assault with a deadly weapon, such killing is manslaughter in the fourth degree.

"The words 'heat of passion' as used in these instructions means a heated state of the blood, caused by a lawful or just provocation which deprives the defendant of the power of self-control.

"2.  The court instructs the jury that if you find

and believe from the evidence that at the county of
Jackson and State of Missouri, at any time before the
19th day of April, 1904, the defendant, James Forsha,
either alone or acting in concert with another or others,
wilfully, deliberately, premeditatedly and of his malice
aforethought, did with a certain revolving pistol, and
that the same was a dangerous and deadly weapon,
shoot one Albert Ferguson, inflicting upon him a mor-
tal wound from which said mortal wound the said Al-
bert Ferguson, within one year thereafter, at the coun-
ty of Jackson and State of Missouri, died, then you will
find the defendant guilty of murder in the first degree,
and so say in your verdict.

"In that event you have nothing to do with the
punishment, that is fixed by law.

"3.   The court instructs the jury that if you fail
to find a verdict according to the law as declared in in-
struction No. 2, but shall find and believe from the evi-
dence that at the county of Jackson and State of Mis-
souri, at any time before the 19th day of April, 1904,
the defendant, James Forsha, either alone or acting in
concert with another or others, wilfully, premeditatedly
and of his malice aforethought, did with a certain re-
volving pistol, and that the same was a dangerous and
deadly weapon, shoot one Albert Ferguson, inflicting
upon him a mortal wound, from which mortal wound
the said Albert Ferguson, within one year thereafter,
at the county of Jackson and State of Missouri, died,
then you will find the defendant guilty of murder in the
second degree, and assess his punishment at imprison-
ment in the state penitentiary for any term not less
than ten years.

"4.   The court instructs the jury that if they find
and believe from the evidence that James Forsha was
present aiding and abetting Edgar G. Bailey in the act
of homicide in evidence in this case, he is in law equally
guilty with him who fired the shot.  When two or more
persons are engaged in the same illegal purpose, any

act done by one of the party in pursuance of that pur-
pose, and with reference to it, is in contemplation of
law the act of all; and proof of such act is evidence
against any or either of the others who were engaged
in the combination.

"5. The court instructs the jury that if you find
and believe from the evidence that defendant James
Forsha conspired and agreed with William Moon and
Edgar G. Bailey to assault and beat Albert Ferguson,
but not to the extent of doing him great bodily harm
and absolutely without any intention in Forsha's mind
of shooting said Ferguson, and that in pursuance of
said agreement any one or all of the parties thereto as-
saulted said Albert Ferguson with the intention afore-
said, and that thereafter or thereupon Edgar G. Bai-
ley, without the consent, aid or encouragement of de-
fendant, James Forsha, shot and killed Albert Fergu-
son, then in that case you will find the defendant guilty
of manslaughter in the fourth degree.

"6. The court instructs the jury that if you shall
believe and find from the evidence that at the time it
is charged that Albert Ferguson was killed the defend-
ant James Forsha, William Moon and Edgar G. Bailey
were acting together, and that Albert Ferguson was
about to kill Edgar G. Bailey or do him great bodily
harm, then he had the right to kill Albert Ferguson
under such circumstances, but, to justify such killing,
you must find from the evidence that he did believe and
had reasonable cause to believe that such injury was
about to be done, and that deceased was killed to pre-
vent such injury. It is not necessary that the danger
should have been actual and about to fall on him, but
it is necessary for him to have believed it, and that
there should have been at the time of such killing rea-
sonable grounds for such belief. It is for you to say
from the evidence in the case whether Edgar G. Bailey
did believe and had reasonable cause to believe that
such impending harm at the time the deceased was

shot was about to fall on him; if as a fact he did not have reasonable cause to believe that such danger was impending at the time the deceased was shot, then such killing is not justifiable. His believing himself in danger is not sufficient; he must have had reasonable cause to believe it, and of that you are to determine from all the facts and circumstances in the case. If you find that Bailey shot in self-defense, as defined, then you should find defendant not guilty.

"7. If the jury believe and find from the evidence that Bailey, Forsha and Moon confederated together and engaged in a common design to take deceased out on the night in question and beat him up; and that it was part of their common design and purpose, if deceased made resistance, to kill him or to do him some great bodily injury, then whatever Bailey did in carrying out the common purpose was in law the act of Forsha, the defendant, and they are equally liable for such act; and if the defendant and Bailey and Moon, in pursuance to such common design, brought on the difficulty in which Albert Ferguson was killed, and entered into it with the intention of killing or inflicting great personal injury upon Ferguson, if he should resist them, then the danger in which they, or any of them, found themselves or himself, would not extenuate the offense or reduce its grade, and there could be no self-defense in the case.

"8. The court instructs the jury that if you find from the evidence that James Forsha, William Moon and Edgar G. Bailey, conspired and agreed to entice Albert Ferguson to Fifteenth and Central streets, and there assault him, but not to the extent of killing him or doing him great bodily harm, and that upon arriving at said place James Forsha struck at or struck Albert Ferguson, but did not inflict upon him any injury sufficient to endanger his life; and that immediately thereafter the defendant James Forsha ran away, and endeavored in good faith to withdraw from said diffi-

culty and Edgar G. Bailey then killed Albert Ferguson, but not under circumstances to constitute complete self-defense, as elsewhere in these instructions defined, then you will find defendant guilty of manslaughter in the fourth degree. But if defendant at the time or immediately before he ran away incited or encouraged Bailey to kill Ferguson or to do him great bodily harm and intended that he should kill or inflict upon him great bodily harm, then his running away would not avail the defendant anything.

"9. The court instructs the jury that if defendant and Bailey and Moon voluntarily entered into the difficulty, or brought it on but without any intention of killing or inflicting upon Ferguson any great personal injury, and without intending to kill him or to do him great bodily harm if he resisted, and during such difficulty Ferguson, before he was assaulted, with a deadly weapon attempted to kill Bailey or Moon or Forsha and it became necessary for Bailey to kill said Ferguson to save himself or to save Moon or Forsha from being killed or receiving great personal injury, then the defendant cannot be entirely excused on the ground that Bailey killed Ferguson in self-defense; but in that case you should find the defendant guilty of manslaughter in the fourth degree.

"10. The court instructs the jury that if they find the defendant guilty of manslaughter in the fourth degree they will assess his punishment at imprisonment in the state penitentiary for a term of two years, or, by imprisonment in the county jail not less than six months nor more than twelve months, or, by a fine not less than five hundred dollars, or, by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months nor more than twelve months.

"11. The court instructs the jury that any statements which the proof shows Edgar G. Bailey made after the homicide was committed and not in the pres-

ence of the defendant Forsha, are not binding upon the defendant; but can only be considered so far as it may throw light upon the acts or testimony of Bailey.

"12. If verbal or written statements of the defendant have been proven in the case, you may take them into consideration, with all the other facts and circumstances proven. What the proof may show you, if anything, that the defendant has said against himself, is presumed to be true, because against himself; but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered with a view to all the other facts and circumstances in the case.

"13. The court instructs the jury that the law presumes the innocence and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial, and at the end entitles the defendant to an acquittal, unless the evidence in the case, when taken as a whole, satisfies you of the defendant's guilt beyond a reasonable doubt, as defined in these instructions.

"14. The court instructs the jury that the burden of proof in this case rests upon the State.

"15. The court instructs the jury that before they can convict the defendant, they must be satisfied of his guilt beyond a reasonable doubt; such doubt, to authorize an acquittal upon reasonable doubt, must be a substantial doubt of the defendant's guilt, with a view to all the evidence in the case, and not a mere possibility of the defendant's innocence.

"16. The jury are the sole judges of the credibility of the witnesses, and of the weight and value to be given to their testimony. In determining as to the credit you will give to a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appear-

ance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives actuating the witness in testifying, the witness's relation to, or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness's statements, the opportunity the witness had to observe and to be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully, or otherwise, as to matters within the knowledge of such witness. All these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper. If, upon a consideration of all the evidence, you conclude that any witness has sworn wilfully false as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony.

"17. The court instructs the jury that the defendant is a competent witness in this case and you must consider his testimony in arriving at your verdict, but in determining what weight and credibility you will give to his testimony in making up your verdict, you may take into consideration, as affecting his credibility, his interest in the result of the case, and that he is the accused party on trial, testifying in his own behalf.

"18. The court instructs the jury that the statement read to you as the dying declaration of Albert Ferguson should be received by you as such declaration, but, because it is a dying declaration, you are not necessarily bound to believe it, but you will give it that weight which you think it ought to have when considered in connection with all the other facts and circumstances in evidence.

"19. The court instructs the jury that the defendant is not charged in this case with making an assault

Vol 190 mo—21

upon Albert Meyers, and you will not consider the testimony before you upon that subject, except in so far as it may tend to throw light upon the motives or intentions of Bailey, Moon, and this defendant; whether or not it does throw light on the motives and intentions of defendant and Moon and Bailey, you will be the judges, when it is viewed in connection with all the other facts and circumstances in the case.''

The cause was submitted to the jury upon the testimony and the instructions of the court as herein indicated, and they returned a verdict of guilty of murder of the second degree, and assessed defendant's punishment at imprisonment in the penitentiary for eighteen years. Sentence and judgment were rendered in accordance with the verdict and from this judgment defendant prosecutes this appeal, and the cause is now before us for consideration.

OPINION.

Numerous complaints are urged by learned counsel for appellant as grounds for the reversal of the judgment in this cause.

This is a companion case of State v. Bailey, *ante,* 257, and the testimony as to the main facts upon which this judgment rests, with a few exceptions, is substantially the same as in that case.

At the very inception of the consideration of this cause, it is well to see what legal propositions were disposed of in the Bailey case, for as to questions involved in that case we see no reason to depart from the conclusions announced, and they must be treated as being settled.

The defendant Bailey, Forsha and Moon were jointly charged with murder, in the information now under consideration, and its sufficiency is challenged in this cause upon the same ground as urged in State v. Bailey, supra. It is unneccessary to repeat the reasons assigned in the Bailey case for holding the charge as

made in the information sufficient; that proposition must be treated as settled. [State v. Bailey, supra; State v. Nelson, 181 Mo. 340.] It will be sufficient to say, as to the additional ground urged in the motion to quash the information, "that the seal of the court was not affixed to the jurat of the clerk, and that the oath was administered by the deputy clerk," that there is no merit in such contention. The court to whom this motion was addressed is presumed to know its officers and their signatures, and the omission of the seal of the court to the jurat does not invalidate the verification. The purpose of affixing the seal of the court to the jurat of the clerk is in the nature of an attestation of the genuineness of his signature; but the affixing of the seal is not an indispensable requisite to such jurat. As was very appropriately said by the Court of Appeals in State v. Pfenninger, 76 Mo. App. l. c. 317, "The judge of a court having a clerk will take judicial notice of the signature of the clerk, and an attestation of such signature by a seal is not indispensable to satisfy the judge of the genuineness of his signature, and when the attention of the judge was called to the signature of the clerk by the motion to quash in this case, it will be presumed, in the absence of any evidence to the contrary, that he inspected the signature of the jurat and saw that it was genuine."

The assignment of error upon the admission of testimony in respect to the difficulty with Meyers on the night of the homicide was fully and exhaustively treated by Judge Gantt in State v. Bailey, and it is only necessary to say that we are fully satisfied with the conclusions reached upon that proposition, and see no reason for a reconsideration of that question or departing fom the rules of evidence announced in that case.

It is insisted by appellant that the court erred in retaining jurors Shaw, Duncan, Bell and Ryan on the panel from which the jury of twelve was

to be selected to try this cause. We have carefully considered the record disclosing the examination of the jurors upon their *voir dire*. The record discloses that after the close of the examination of each juror, counsel for appellant contented themselves with a simple objection, "challenged for cause." This was insufficient to preserve the error complained of for review. It has been uniformly held by this court that the grounds of challenge must be specifically stated. [State v. Taylor, 134 Mo. 109, and cases cited; State v. Evans, 161 Mo. 95; State v. McGinnis, 158 Mo. 105.] We may also add that, in addition to the failure to preserve the question of disqualification of the jurors, for review in this court, their examination did not disclose their disqualification. While they had formed and expressed opinions as to the guilt of the defendant from rumor or newspaper accounts of the killing of Ferguson, they finally stated that they could give the defendant a fair and impartial trial upon the testimony as it might be introduced before them. In State v. Reed, 137 Mo. 1. c. 132, the rule upon this subject was clearly and tersely stated. It was there said: "It is well-settled in this State that a person otherwise qualified to sit as a juror in a criminal case, is not disqualified by reason of having formed an opinion as to the guilt or innocence of the accused from reading partial newspaper accounts of the homicide, or from rumor, when he states on his *voir dire* that he can give the defendant a fair and impartial trial," and, "Moreover, a general objection did really not amount to an objection."

Numerous complaints are made upon the admission and exclusion of evidence during the progress of this trial; some of them, doubtless, are not seriously made; however, we have fully considered all of them, but must be content with the expression of our views upon those which are of sufficient merit to demand serious consideration. It is insisted

by appellant that the testimony of L. R. Cooper, in which the witness stated that on the 19th of March he had said in the presence of Bailey that "the strikers could not expect to win as long as they are using violence and shooting people; they will get public sentiment down on them," and that Bailey replied, "that is the only way to win," was incompetent and its admission constituted reversible error. The objection to this testimony is predicated upon two theories: first, that the statement was made in the absence of this defendant, and cannot be binding upon him, and, secondly, that it was in the nature of a confession or admission of a conspirator after the commission of the act, and termination of the conspiracy. Appellant clearly misconceives the purpose of the testimony of Cooper. Bailey was called as a witness for defendant in this cause, and the State was, beyond question, privileged to introduce any testimony which tended to contradict him, and Bailey having denied upon cross-examination that he had made any such statement as testified by Cooper, it was clearly competent for the State to contradict him in that respect. The statements of Bailey were relevant in this controversy, for he was the principal actor in the commission of the homicide, and his statement to Cooper tended to refute the theory of self-defense, and was therefore material; and, being so, the State had the right to contradict the witness in respect to such testimony.

There was no error in the exclusion of the answer of Bailey to a question propounded, that in shooting Ferguson, he (Bailey) was not actuated by anything that this defendant said or did. He had fully testified on that subject, had denied that this defendant had said anything to him about killing Ferguson, or that there was any agreement or understanding that any violence was to be inflicted upon any one, and stated that the mission in taking the drive with Ferguson was purely an innocent one. We are unable to see what force the

answer to the question could have added to what he had already testified. His answer was nothing more than a conclusion of the witness from the facts to which he had given testimony, and it was the province of the jury to frame their conclusions from such facts, and the testimony was properly excluded.

The record discloses complaint upon the cross-examination of witness Moon for defendant. A careful consideration of that entire examination fails to disclose any error. The State, as affecting the credibility of the witness, could legitimately inquire of the witness if he had been previously convicted of a criminal offense. After the witness admitted that he had pleaded guilty to a common assault, there was nothing improper in permitting the State to show by the record that the witness had pleaded guilty to a charge of an assault with intent to kill. This testimony was admissible as affecting the credibility of the witness. [State v. Howard, 102 Mo. 142; State v. Blitz, 171 Mo. 530.]

Again, it is urged that the testimony of witnesses W. E. Ferguson and Mrs. Clara Stevens was incompetent and should have been excluded. An examination of the record as to the testimony of the witnesses above noted discloses that the examination of these witnesses was complete before any effort was made to exclude this testimony, and while the questions and answers in the examination cover a number of pages, there is an entire absence of a single objection or exception to the testimony given. After the testimony was all submitted to the jury, then counsel for appellant moved that it be stricken out. This method of preserving complaints to the action of the trial court has not met with the approval of this court. It was ruled in State v. Marcks, 140 Mo. l. c. 668 and 669, that where timely objections and exceptions were not made to testimony at the time of its introduction, it was not error to refuse to exclude it afterwards, and in the discussion of the proposition, GANTT, J., in speaking for this court, said: "A party

can not speculate upon the effect of evidence which is objectionable upon its face when offered, as this clearly was, if ever, and then complain of a refusal to reject it later in the trial. [Maxwell v. Railroad, 85 Mo. 95; State v. Hope, 100 Mo. 347; People v. Chacon, 102 N. Y. 669; Miller v. Montgomery, 78 N. Y. 282; Quin v. Lloyd, 41 N. Y. 349; Barkly v. Copeland, 86 Cal. 483; 1 Rice, Ev., secs. 258 and 259; Hickman v. Green, 123 Mo. 165.]'' This rule of practice, as announced in the case last cited, was approved in Roe v. Bank, 167 Mo. 426.

This leads us to the complaint urged in respect to the examination of defendant in this cause, as a witness in his own behalf. The record before us discloses that the defendant rested his case in chief without being introduced as a witness in the cause, and the court properly ruled that his testimony should be confined to rebuttal of the rebuttal testimony introduced by the State. The record discloses numerous questions propounded to the defendant and his answers excluded without any objection or exception on the part of the appellant; hence the action of the court as to those questions and answers was not properly preserved and is not subject to be reviewed by this court. Counsel for appellant with commendable frankness concede that no proper objections or exceptions were made in respect to these matters. The defendant was permitted to testify fully as to all matters which were in rebuttal of the testimony introduced in rebuttal by the State. It is apparent from the record that the main purpose of introducing defendant as a witness was to explain the statement in writing made by him, introduced by the State. There is no pretense that he did not make the statement offered in evidence, or that it is ambiguous or uncertain in any of its terms, and so far as concerns any explanation of this statement at the time it was made, and what was said at the time he signed it, and any other statements which he made at the time, which were

not correctly reduced to writing, the State, by its counsel, expressly announced that it had no objection to such showing; but the record discloses that, notwithstanding such announcement by the State's counsel, no examination was made along that line. That we may fully appreciate just what was done in respect to the examination of the defendant, touching the statement he had made, which was introduced by the State, we quote from the record upon that subject:

"Q.   I will ask this question, Mr. Forsha, tell the jury what you said at police station at the time this signed statement was made by you; tell the jury all that you said about the shooting of Ferguson and what part you said, if anything, was not included in the statement, and tell the jury all of the facts leading up to and including the shooting of Ferguson by Bailey and all that you said and did in that connection?

"Mr. Reed: The State does not object to that part of the question which asks the witness, Forsha, to tell the jury what he said at the police station at the time he signed the statement, nor to the witness's telling any other statement which he made at the time of the signing of the statement which he claims weren't correctly taken down in the statement, but the State does object to the latter part of the question which is 'state all of the facts and circumstances leading up to and including the shooting of Ferguson by Bailey and all that you said and did in that connection,' for the reason that it isn't surrebuttal and should have been introduced, if at all, in the defense in chief.

"The Court: Sustained.

"To which ruling of the court the defendant did then and there at the time duly except."

This clearly indicates an express waiver of any objection by the State to the testimony of defendant as to all proper explanations of the statement made by him in writing. The defendant, at the close of the State's case in chief, had every opportunity to go on

the stand and testify fully as to the entire difficulty, but failing to do so, we are of the opinion that it was not error for the court to limit his examination in the manner it did. There was offered appellant an opportunity to explain fully what he said at the time he made the statement at the police station, but his counsel declined to avail themselves of such opportunity and moved the court to re-open this cause and permit them to introduce defendant as a witness in chief; this the court declined to do and we think properly so. Courts, in the administration of justice, are fully justified in adhering to the well-recognized and uniform rules of procedure in the trial of causes. To grant the request of appellant in this cause, and adopt a rule suggested by such request, could not help but result in endless trials and a weak and feeble administration of the law.

We have read with care and interest the instructions given by the court in this cause, and have herein fully reproduced them. They are a full and fair presentation of the law as applicable to the facts developed at the trial. They fully meet every phase of this case, and are extremely favorable to the defendant.

We have fully considered the refused instructions requested by appellant, and it is sufficient to say that a number of them did not declare the law and were properly refused, and those correctly announcing legal principles were fully covered by those given by the court. In oral argument it was earnestly insisted that instructions 10 and 12, requested by defendant, should have been given. They are as follows:

"10. The court instructs the jury that even if you find from the evidence that defendant, James Forsha, conspired and agreed with Edgar G. Bailey to kill or inflict great bodily harm upon Albert Ferguson, and that during the difficulty, if any, with said Albert Ferguson, defendant told, advised or encouraged Edgar G. Bailey to shoot said Albert Ferguson, still if

you further find and believe from the evidence that before Bailey fired the fatal shot, Forsha, in good faith, withdrew from said difficulty and abandoned the design to kill or inflict great bodily harm upon said Ferguson, and that Bailey knowing that Forsha had withdrawn from and abandoned said difficulty and design, thereafter from and on account of motives, intentions and purposes actuating his, the said Bailey's mind alone, shot and killed Albert Ferguson, then in that case you should find the defendant, James Forsha, not guilty.

"And statements made by Bailey and not in the presence of the defendant wherein Bailey states his views as to the way strikes should be conducted, should not be considered by the jury as prejudicial to the defendant nor binding upon him."

"12. The court instructs the jury that even if you find and believe from the evidence that James Forsha agreed with Edgar G. Bailey and others to kill or inflict great bodily harm upon Ferguson, still if you further find from the evidence that before Edgar Bailey shot and killed Albert Ferguson, defendant, James Forsha, attempted in good faith to withdraw from and abandon said assault upon or difficulty with Ferguson and succeeding in so doing, and that said Edgar Bailey knew and believed and had reasonable cause to believe from all the facts and circumstances that said James Forsha had so withdrawn from said assault and difficulty, and that thereafter said Edgar G. Bailey from and on account of motives, purposes or incentives actuating his own mind and heart, and without the consent, aid or encouragement of Forsha, shot and killed said Albert Ferguson, then in that case, you should find the defendant not guilty."

It will be observed that instruction 4, given by the court, fully covered the law as applicable to the question of defendant's aiding and abetting in the commission of the homicide.

Instruction 8, given by the court, was the only instruction to which the defendant was entitled upon the subject of withdrawing from the difficulty.

We are unable to assent to the legal principles announced in the refused instructions as quoted.    If the defendant aided, abetted or encouraged Bailey, in the commission of this homicide, as some of the witnesses put it, at the time the difficulty was in progress, commanding Bailey to "shoot him; shoot him; kill the son-of-a-bitch," the mere fact that he undertook to flee from the scene of the difficulty before the fatal shot was fired, by no means can relieve him of responsibility for his participation in the commission of the act.

We are unwilling to sanction, as the law of this State, that a defendant can first, by words and actions, put in operation a difficulty or aid and abet in the commencement of it, and after having, by his course of conduct, brought the principal actors into a deadly contest, can then flee from the scene of the struggle and thereby relieve himself absolutely from the results of such fatal difficulty.    Such is not the law of this State, and the court very properly refused the instructions requested upon that subject.

Many other objections to the admission of testimony are presented by the record.    Upon a careful consideration of them we think they are without merit.

We have fully considered the questions involved in this case, as presented by the record before us, and if the jury believed the testimony as introduced by the State, we are deeply impressed with the exceedingly great tenderness manifested by the jury in fixing the punishment of the defendant.

In view of the results of the finding of the jury in the companion case of State v. Bailey, which was fully supported by the evidence, we confess that, upon the showing as developed in this cause, which as to the essential elements of the crime charged, was equally damaging, there is little ground for complaint on the

part of the appellant at the conclusions reached by the jury.

Finding no error in the record prejudicial to the rights of the defendant, the judgment should be affirmed, and it is so ordered.

All concur, except *Burgess, P. J.,* not sitting.