**STATE of Missouri, Respondent,**

v.

**Dennis SKILLICORN, Appellant.**

**No. WD 32168.**

Missouri Court of Appeals,
Western District.

June 1, 1982.

Lee M. Nation, Nation & Curley and Richard L. Knight, Olsen & Talpers, Inc., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Dennis Skillicorn appeals his conviction of murder in the second degree after a jury found him guilty. He was sentenced to thirty-five years imprisonment. We affirm.

On December 2, 1979, Skillicorn and two friends, James Betts and Elias Frank Brooks, Jr., met around noon. After drinking beer they decided to commit a burglary at some undetermined place "in the country". The three stopped at Wendell Howell's house, near Levasy, Missouri, where Skillicorn knocked on the door. He returned to the car and reported that someone was in the house. They left the house but returned after deciding to "cowboy" or rush into the house anyway. Betts had a sawed-off shotgun and Skillicorn had a handgun.

Betts held his gun on Mr. Howell while Brooks and Skillicorn ransacked the house. Betts then told his accomplices that he was going to have to kill Mr. Howell. At Betts'

direction, they waited in the car until they heard the fatal gunshot and then returned to the house. A grand jury indicted Skillicorn for the capital murder of Wendell Howell.

At the trial Brooks, who received a twenty-year sentence upon his guilty plea to murder in the second degree, testified for the state. He said that both Betts and Skillicorn took their guns into the Howell house. According to Brooks, he objected to Betts' statement that Betts would have to kill Mr. Howell, but he believed that Skillicorn said nothing. After the shooting, Betts returned to the car and told Brooks and Skillicorn to go back into the house to see if Mr. Howell was dead. Although Skillicorn went inside the house again, Brooks did not.

On cross-examination Brooks stated that he did not try to take the gun from Betts because Brooks was afraid that Betts would shoot Brooks and Skillicorn. A television set, cash, and beer and chicken from the refrigerator were taken from the residence.

Skillicorn, the only defense witness, stated that although the three men had "done some burglaries together", they had not used guns before this time. He said that the handgun, as well as the sawed-off shotgun, belonged to Betts. He denied that he carried it into the Howell house. He gave the following explanation of the events leading to the killing:

> Well, I had brought the stuff down from upstairs and I set it down right there where they were at, and Betts was eating a piece of chicken. He told me to—"We're going to have to kill this man." He was talking to me and Frank both when he stated that, "We're going to have to kill this man because he can identify all three of us." Well, Frank told him he couldn't do it because he didn't have the heart, wanted no part of it, and so he just told us at that time, both of us, just to get out of the house, just to get out of the house. And that's what we done. Frank went out of the house first. I followed. I had to pick up the things I brought downstairs, and I followed him out of the house.

Skillicorn further testified that he didn't try to take the shotgun from Betts "[b]ecause I had it in my head that the man would have shot me. I was positive of that." Skillicorn admitted that he returned to the house on Betts' orders to see if Mr. Howell was dead. He took beer from the kitchen table on his way back to the car.

The trial court submitted instructions on capital murder, murder in the second degree and manslaughter. In addition, the court without comment or objection from defendant gave withdrawal Instruction No. 11 (MAI–CR 2.16):

> If you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction No. 6, or No. 7, or No. 8, and

> If you further find that it is more probably true than not true that before the commission of the offenses of capital murder, or murder in the second degree, or manslaughter as submitted in Instruction No. 6, or No. 7, or No. 8, the defendant abandoned his purpose to promote the commission of that offense and gave timely warning to law enforcement officers or otherwise made proper effort to prevent the commission of the offense, you must find the defendant not guilty of that offense.

The jury returned a verdict of guilty of murder in the second degree. Defendant's motion for a new trial contained no reference to Instruction No. 11 or the submission of the abandonment defense.

On appeal Skillicorn contends that the trial court committed plain error in giving the withdrawal instruction because this instruction unconstitutionally shifted the burden of proof to the defendant and, therefore, violated the due process clause of the United States Constitution.

MAI–CR 2.16 refers to the Notes on Use under MAI–CR 2.12 which provide that the affirmative defense of abandonment must be submitted whether requested or not if evidence to support the defense was adduced. Apparently the trial judge believed

.that defendant's testimony was sufficient to require the court to give that instruction. Following the lead of *State v. O'Neal*, 618 S.W.2d 31, 36–37, decided by the Supreme Court on June 8, 1981, almost ten months after this defendant's trial, we hold that the evidence of abandonment in this case was so minimal as not to support the submission of that defense to the jury.

In *State v. O'Neal* the appellant contended that error occurred when the trial court failed and refused to instruct the jury on the affirmative defense of abandonment and withdrawal as set forth in § 562.041 (entitled "Responsibility for the conduct of another"), subsection 2, R.S.Mo. 1978, which provides in part as follows:

However, a person is not so responsible if:

. . . .

(3) Before the commission of the offense he abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

In *O'Neal*, as in the instant case, the only evidentiary support for an instruction on abandonment of the murder which resulted from a burglary was the testimony of the defendant. O'Neal asserted that when his accomplice, Boggs, suggested that the victim should be killed, O'Neal replied that he wanted nothing more to do with "the burglary or the robbery or the killing or any part of it". O'Neal then "just turned and walked off, thinking maybe he'd follow and maybe think before killing the old man". He didn't try to stop Boggs because "I was afraid maybe he might shoot me . . . ."

The Supreme Court held at 37 that since O'Neal made no attempt to warn law enforcement officials of his intent to abandon the burglaries or the shooting, the evidence would have had to permit a jury to find that he "otherwise [made] proper effort to prevent the commission of the offense". Noting that "[a] person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene", the court relied on *State v.*

*Forsha*, 190 Mo. 296, 88 S.W. 746, 757 (1905), which held that:

We are unwilling to sanction as the law of this state that a defendant can first, by words and actions, put in operation a difficulty, or aid and abet in the commencement of it, and, after having by his course of conduct brought the principal actors into a deadly contest, . . . then flee from the scene of the struggle and thereby relieve himself absolutely from the results of such fatal difficulty.

Although the Supreme Court did not declare what would constitute "proper effort to prevent the commission of the offense", it held "as a matter of law, that the belated expression of nonapproval of Boggs' proposed action, and then turning and walking away did not constitute the 'proper effort' contemplated by § 562.041". Therefore, the court concluded that the trial court was correct in refusing to give the jury an instruction on abandonment and withdrawal.

In the instant case, defendant Skillicorn did even less than did O'Neal to withdraw from and abandon the criminal activity. Skillicorn's evidence showed no intent to abandon his purpose of cooperating with Betts in either the burglary or the shooting. Accordingly, we hold that as a matter of law the trial court was not obliged to give the abandonment instruction. We need not reach the question of the constitutionality of the shifting burden of proof in the instruction because Skillicorn, as a matter of law, did not abandon and no shifting of the burden could have occurred.

Moreover, neither Rule 84.13(c) nor 29.12 is invoked. We find that no "manifest injustice" or "miscarriage of justice" resulted from Skillicorn's being given more than he was entitled to have under the law. *State v. Scott*, 534 S.W.2d 537, 540 (Mo.App.1976).

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.