**STATE of Missouri, Respondent,**

v.

**Walter Marvin BAILEY, Appellant.**

No. 50634.

Supreme Court of Missouri,

Division No. 1.

Oct. 12, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Nov. 9, 1964.

Thomas F.. Eagleton, Atty. Gen., Jefferson City, George D. Chopin, Special Asst. Atty. Gen., St. Louis, for respondent.

Charles M. Shaw, Clayton, for appellant.

HOLMAN, Judge.

Walter Marvin Bailey was charged with and found guilty of the offense of burglary in the second degree and the jury fixed his punishment "at imprisonment in the custody of the State Department of Corrections for four years." See Sections 560.070 and 560.095(2), RSMo 1959, V.A.M.S. He has appealed from the ensuing judgment and sentence

The building here involved was a filling station building located on St. Charles Rock Road in Bridgeton, St. Louis County, Missouri. The events hereinafter described began at about one o'clock a. m. on July 6, 1962. There was testimony to the effect that the filling station building contained various items of personal property and merchandise, including about 500 cartons of cigarettes as well as a number of cases of oil. George Eble, Jr. was on duty when the filling station was closed at ten p. m. on July 5 and testified that he locked all of the doors when he left the premises.

Officer Earl Ahrens of the Bridgeton police force testified that he was driving west on St. Charles Rock Road in a patrol car at about one a. m. when his suspicions were aroused by an Oldsmobile car parked just west of the Western Zephyr Service Station; that he decided to check the car and radioed for assistance; that Officers Lewis and Stringer arrived very shortly thereafter; that they inspected the car, and then noticed a hole in the wall on the west side of the service station building; that he then looked in the front door and saw the door to the men's room move; that after calling to the persons in the building to come out he fired two shots through the front door; that at that time a man, later identified as defendant, came through the hole in the wall of the building and was placed under arrest; that a little later, after another warning shot was fired, a second man, later identified as Clarence Barthelemy, also came out through the hole in the wall of the building; that a radio check was made of the license on the Oldsmobile car and it was found to belong to Barthelemy. This officer further testified that he entered the building through the hole that had been used by the defendant and Barthelemy and found in the station a crowbar, a pair of bolt cutters, and a nail puller (these tools were identified and admitted in evidence); that one entering the building through the hole in the wall is in a room from which there is no means of access into the front part of the filling station; that he found that another hole had been made in an inner wall which would permit entrance into the remainder of the building.

Sergeant Lewis and Officer Stringer of the Bridgeton police force gave testimony similar to that of Officer Ahrens and corroborated the fact that both defendant and Barthelemy were in the building when they arrived and came out of the hole in the manner hereinbefore described.

The only evidence offered by defendant was his own testimony. He stated that on the evening of July 5 he was at the Londoff Bowling Lanes when his friend Barthelemy came by and asked him to take a ride, stating that he knew where we could "go out and make some easy money"; that Barthelemy drove his car to the filling station in question; that when they arrived Barthelemy tore a wooden board out of the side of the building and said " 'I think we can get in.' I said, 'No, I'm not going in.' He said 'How about staying up there and being a lookout for me, if anybody comes just holler.' I said, 'All right.' So then I thought a minute, decided, 'well, I have never been in any trouble, I don't want to get in any now.' I told him I was leaving. When I left, I was walking out the driveway, the police officer drove up from Bridgeton. Q. Now where were you when the police officers drove up? A. Up by the gas pumps."

With further reference to his defense of voluntary abandonment, hereinafter discussed, defendant testified as follows: "Q. Let me ask you this: do I understand that you admit that you started out to do wrong, to commit a crime? A. Yes, sir. Q. When was it that you decided not to? A. When he was tearing up the side of the building. Q. And what did you do then when he started tearing it up? A. I told him I wasn't going in. Q. Then what did you start to do? A. Well, first he asked me if I'd watch for him and I said 'yes' at first. Then I told him 'no, I'm leaving,' after he started making a lot of noise with this board and stuff. * * * Q. And you told me before when I asked you, you said you were a lookout and then you said after he was inside the hole that you then decided,

you got scared and decided not to be a lookout any more, is that correct? A. Yes." Defendant testified that he never entered the building.

■ The first point briefed is that the court erred in giving Instruction No. 3 which reads, in part, as follows:

"All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly is the act of all and of each one so acting. However, the mere presence of one at or near the scene of a crime does not render him liable as a participator therein. If one is only a spectator, innocent of any unlawful act or criminal intent, and does not aid, abet, assist, advise or encourage another or others in the commission of a crime, that person is not liable as a principal, or otherwise, and should be acquitted. * * * In this regard you are instructed that to find the defendant guilty of burglary in the second degree it is not necessary for the defendant actually to have broken into any part of the building * * * but, if you find and believe from the evidence beyond a reasonable doubt that the defendant was then and there present, and did anything toward the completion of the common design to commit the burglary alleged, if you so find, *by watching on the outside of the said building or otherwise,* then you ought to find him guilty."

He specifically complains of the concluding portion thereof which we have italicized. It is defendant's first contention that there was no evidence that he was acting as a lookout on the outside of the building. That contention is without merit. We have heretofore quoted defendant's testimony in which he stated that he continued acting as a lookout until after Barthelemy had entered the building.

There is also no merit in the contention that the italicized portion of the instruction

is a comment on the evidence and assumes the fact that defendant was watching on the outside of the building. The portion of the instruction in question hypothesizes a fact, supported by the evidence, which the jury was required to find. We rule this point against defendant.

Complaint is also made of the fact that the italicized portion of the instruction contains the words "or otherwise." Defendant states that the use of those words authorized a verdict of guilty without requiring a finding of specific hypothesized facts supported by the evidence. We have concluded that this contention is not before us for consideration. Supreme Court Rule 27.20, V.A.M.R. requires that a motion for new trial "must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." In his motion for new trial defendant complained that Instruction No. 3 was erroneous because it "impresses upon the jury that the defendant was on the outside of the building watching. There was no evidence, from either the State or the defendant, that the defendant was on the outside acting as a lookout and to so instruct the jury was to inject matters into the case which were not brought before the jury by the evidence of either the plaintiff or the defendant." It is apparent that the motion does not mention any failure of the instruction to hypothesize facts and does not refer to the words "or otherwise." The instant contention was not brought to the attention of the trial court in the motion for new trial and will not be considered upon appeal. State v. Palmer, Mo.Sup., 306 S.W.2d 441 [10].

The final point briefed by defendant is that the court erred in failing to give an instruction concerning the defense of voluntary abandonment or repentance. In regard to that defense it has been said that "[w]here the perpetration of a felony has been entered on, one who had aided and encouraged its commission may nevertheless, *before its completion*, withdraw all his aid and encouragement and escape criminal liability for the completed felony; but his withdrawal must be evidenced by acts or words showing to his confederates that he disapproves or opposes the contemplated crime. Moreover, it is essential that he withdraw in due time, that the one seeking *to avoid liability do everything practicable to detach himself from the criminal enter-prize and to prevent the consummation of the crime * * *.*" (Italics ours.) 22 C.J.S. Criminal Law § 89 (1961). In 15 Am. Jur. Criminal Law § 333 (1958), it is stated that "[t]here is in every design or plan to commit a crime a place of repentance or locus penitentiae whereby the one planning to commit it may abandon the idea and thus avoid criminal liability. This is true where one of the persons who has entered into a conspiracy, necessarily involving an overt act, abandons the plan before the act is done. * * * It is obvious, however, that where the crime is consummated, there is no field for an application of the doctrine." See also State v. Webb, 216 Mo. 378, 115 S.W. 998, 20 L.R.A.,N.S., 1142; Pollack v. State, 215 Wis. 200, 253 N.W. 560, 254 N.W. 471, and People v. King, 30 Cal.App. 2d 185, 85 P.2d 928 [31].

The only evidence tending to support the defense of voluntary abandonment is the testimony of defendant. However, it appears from defendant's unequivocal testimony that he did not decide to discontinue acting as a lookout until after Barthelemy had already entered the building. It is obvious that at that time the crime of burglary had been consummated and it was too late for defendant to withdraw and escape the consequences of his conduct. In that situation the evidence would not have supported an instruction on voluntary abandonment and the court did not err in failing to give one.

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.