**STATE of Missouri, Respondent,**

v.

**Robert C. MOUNTJOY, Appellant.**

No. 29532.

Missouri Court of Appeals, Western District.

June 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1979.

Application to Transfer Denied Sept. 11, 1979.

Clifford A. Cohen, Public Defender, Kevin R. Locke, Asst. Public Defender, Kansas City, Herbert William McIntosh, Bellmann, Speck & Handley, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and ROBERT R. WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Appeal from conviction on jury trial of second degree burglary and stealing in connection therewith and two counts of felonious assault without malice.

In this court the issues involve the sufficiency of the evidence to support the convictions and whether or not appellant is entitled to benefit of the holding in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), although no objection was made at trial to the composition of the jury panel.

Mrs. Mary Middaugh left her home, located at 8619 Drury in Kansas City, Missouri, at 6:00 A.M. on May 13, 1976, after checking the doors and windows to see that all was secure before she left for work. The back door which the family had not been using since its access was blocked by some remodeling work was locked. She left through the front door leaving it unlocked for her son to lock when he left for school later. When she returned home at 3:00 P.M. she found the front door locked. Upon entering the house, she discovered that a gun cabinet had been broken into and nine rifles and shotguns removed. The back door was open and an obstructing

board had been moved aside. No marks of forcible entry were found around the door.

In the afternoon of the same day, Darrell Phillips, who lived near the Middaugh home, saw a car back into a nearby alley and park. After Phillips and a friend, Hal Buell, went to the car and asked the driver what he was doing, the car left. As they were standing there, Phillips and Buell saw three men walking through an adjoining field carrying several rifles. Several minutes later, after Phillips and Buell had returned to Phillips' house, the same car driven by a different individual pulled up and stopped in front of that house. Again, Phillips and Buell questioned the driver and the car left. Buell recorded the car's license number, which was Missouri license Z1N–836. Shortly after the car left for the second time, Phillips' dog began to bark at a point down the street from his house. As Phillips and Buell went to retrieve the dog, they saw two men standing nearby, and then saw them kneel into the bushes. When Phillips and Buell reached the area where the dog was, one of the hiding men, subsequently identified as appellant's brother, Charles Mountjoy, pointed a gun at Phillips and Buell and said "I'm going to blow your god damn head off and your dog's too" and "you've seen too much. Where do you want it, the head or the chest?" Phillips explained that he was merely there to get his dog. The other man, identified as appellant Robert Mountjoy, said to his brother, "Let's get the hell out of here" and both men fled. Phillips and Buell summoned the police and then returned to the place where they had seen appellant and his brother, and there found five rifles, subsequently identified as weapons taken from the Middaugh residence. Tracking the men's trail through the wet grass, Phillips traced their path back to the Middaugh home.

After taking the statements of Phillips, Buell and Mrs. Middaugh and determining that the described license plate was registered to Charles Mountjoy, police put out a "pickup order" for that individual. Appellant and his brother were apprehended fifteen days later as they were in the process of pushing Charles Mountjoy's car (license number Z1N–836) out of a ditch. Appellant was identified by Phillips and Buell at the trial.

Appellant's fingerprints were found on the gun cabinet and the appellant had not been given permission to enter the home or take the guns.

Appellant offered his own testimony and that of another witness in support of his alibi defense that he and his brother had been painting a woman's house all during the day in question.

Appellant was found guilty as charged on Count I of second degree burglary and stealing, and guilty on Counts II and III of the lesser included offense of assault with intent to do great bodily harm without malice aforethought. Appellant was sentenced by the court under the Habitual Criminal Act five years for burglary and five years for stealing, to run consecutively, and five years each on Counts II and III, such sentences to run concurrently with the burglary and stealing sentences. Appellant brings this appeal from his conviction and sentence.

Appellant contends that the evidence was insufficient to support the verdict because there was no evidence of a breaking into the Middaugh household.

■ In reviewing a sufficiency of the evidence contention, all evidence tending to support the guilty verdict must be considered true, contrary evidence disregarded and every reasonable inference supporting the verdict must be indulged. *State v. Hatten*, 561 S.W.2d 706, 711[2] (Mo.App.1978). Appellant argues the evidence of breaking in this case was entirely circumstantial and therefore " * * * the facts and circumstances relied on by the state to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of his innocence." (citations omitted.) *State v. Lee*, 556 S.W.2d 25, 32[13, 14] (Mo. banc 1977).

■ Appellant does not challenge the proof of entry or intent to steal but contests

a lack of evidence showing a *breaking*. To find the appellant guilty of second degree burglary the jury must have found that the appellant broke and entered the home with the intent to commit a felony or a theft therein. *State v. Cox*, 527 S.W.2d 448, 452[4, 5] (Mo.App.1975). The evidence of breaking viewed in its most favorable light toward upholding the guilty verdict is as follows: before she left for work at 6:00 A.M. on the day of the burglary, Mrs. Middaugh "secured the house," checking among other things to make sure that the back door was closed and locked; however, she left the front door unlocked for her twelve-year-old son, who was to leave after her, to close and lock when he went to school. Mrs. Middaugh testified that as a result of some unfinished remodeling work, inside access to the back door was partly blocked by a board leaning against it and that, consequently, "we locked it and never went in and out [of] it." When she returned home at three o'clock that afternoon, she found the front door locked but the back door partly open, the obstructing board pushed aside. Appellant's fingerprints were later found on a gun cabinet in the Middaugh home, from which nine weapons had been taken. Appellant did not have the Middaugh's permission to enter their house and take the guns.

This evidence is sufficient to uphold a finding that the appellant broke into the Middaugh home. The back door was kept locked and not used by the family. All that was necessary to establish a breaking was to show that the appellant pushed open an unlocked door and that had previously been shut. *State v. Sanderson*, 528 S.W.2d 527, 530–531[3–6] (Mo.App.1975). The facts and circumstances relied on are consistent with each other and the appellant's guilt. The appellant's contention calls for the assumption that one of Mrs. Middaugh's children first closed and locked the front door and then moved the board out of the way, unlocked the back door, left it standing open when he left and entry was through the opened door. Clearly that theory is inconsistent with the evidence and fundamentally unreasonable. "[T]he circumstances need not be absolutely conclusive of (guilt), and they need not demonstrate impossibility of innocence," and "the mere existence of other possible hypothesis is not enough to remove the case from the jury." *State v. Thomas*, 452 S.W.2d 160, 162[1–3] (Mo.1970).

Appellant next contends that the conviction for the assaults is unsupported by the evidence because there was no evidence that appellant participated actively in his brother's assaults upon Phillips and Buell.

The assaults charged were separately upon Phillips and Buell and the submission was that appellant either acting alone or together with his brother committed an assault upon each of the victims by pointing a gun at him and threatening to kill him.

Both Phillips and Buell testified that the verbal threats against them were made by appellant's brother. Phillips testified that, at the time of the encounter, appellant pointed a pistol at them. (On a hearing on a motion to suppress identification Phillips had stated that appellant had not actually pointed a gun at him. That testimony was not before the jury.) Buell testified that appellant "pointed a shotgun up, * * * horizontal, you to me * * * in a general direction. I was more concerned with the guy pointing the pistol at me."

The state's evidence was sufficient to show appellant's affirmative participation in the assaults. *State v. Simmons*, 494 S.W.2d 302, 305[4]–[6] (Mo.1973); *State v. Fowler*, 558 S.W.2d 366, 368[3–5], [6] (Mo.App.1977); *State v. Dodson*, 556 S.W.2d 938, 950[27–29] (Mo.App.1977). The state's evidence would support the finding that appellant reinforced his brother's threats by pointing a weapon at the victims of the assault, and therefore that he was not a mere observer of the incident. This claim of error is without merit.

Appellant's final point is:

"The trial court erred in failing to strike the jury panel sua sponte as Missouri's jury selection system at the time of trial was offensive to the United States Constitution in that it systematically excluded women

from jury service and denied appellant his right to be tried by a jury representative of a cross-section of society."

This case was tried in February of 1977, before the ruling of the United States Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), but after the decision in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

Appellant relies upon the plain error rule (Rule 27.20(c)) and he makes no claim of having raised this issue before the trial court by a timely motion to quash the panel.

■ Generally, "[a] challenge to the array or a motion to quash the venire must be timely filed. It should be made at the first opportunity, or as soon as the facts which warrant it are known, * * *." 50 C.J.S. Juries § 263, p. 1024 (1947). Among cases applying this rule are *State v. Sockel,* 485 S.W.2d 393, 396–397[5] (Mo.1972); *State v. Robinson,* 484 S.W.2d 186, 188[1–5] (Mo. 1972); *State v. Kelly,* 506 S.W.2d 61, 63[1, 2] (Mo.App.1974). See *Lee v. Missouri,* 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979).

■ The trial court was not obliged to act sua sponte to strike the jury panel and failure to raise the question then precludes the relief now sought. The same conclusion applies to the claim of appellant based upon *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954).

Judgment affirmed.

All concur.