
**STATE of Missouri, Respondent,**

v.

**Cornelius JOHNSON, Appellant.**

**No. 61612.**

Supreme Court of Missouri,
En Banc.

Oct. 15, 1980.

Rehearing Denied Nov. 12, 1980.

Lee M. Nation, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

MORGAN, Judge.

On April 24, 1978, appellant was tried to a jury on two counts of capital murder and one of assault with intent to kill with malice aforethought and was found guilty on each count.

The Western District of the Court of Appeals reversed the capital murder convictions, generally, for alleged instructional errors and affirmed the conviction and sentence for the assault. Motions for Rehearing were overruled; but, thereafter, the cause was transferred under Rule 83.02 to this Court "because of the general interest and importance of the questions of law involved."

We believe that the sole and dispositive issue is that raised in appellant's *pro se* brief. Therein, he submits that he was denied due process of law because the method of selecting his jury was defective in that the percentage of female "veniremen" available was so small as to offend the fifth, sixth and fourteenth amendments. Being raised for the first time before this Court, he necessarily relies on plain error under Rule 29.12(b), formerly Rule 27.20(c).

Section 22(b) of Article I of the 1945 Constitution of Missouri provides that: "No citizen shall be disqualified from jury service because of sex, but the Court shall excuse any woman who requests exemption therefrom before being sworn as a juror." Consistent therewith, § 494.031(2), RSMo 1969, provides in part that: "The following persons shall, upon their timely application to the court, be excused from service as a juror, either grand or petit: . . . (2) Any woman who requests exemption before being sworn as a juror; . . . ." Of immediate interest, however, is Chapter 497 of the statutory law of this state, entitled: *Juries*

*In Counties Of 450,000 to 700,000 Inhabitants (Jackson County).* Suffice it to say that therein § 497.130, in aid of the selection process for jurors, declared that: "The questionnaire [to be mailed to prospective jurors] shall be in the following form and none other, without additions or subtractions . . . ." The *"form"* in several instances tends to emphasize the declared right of women to assert an automatic exemption from jury service.

On September 27, 1977, this Court in *State v. Duren,* 556 S.W.2d 11, rejected an attack against the statutory procedure just noted. However, the United States Supreme Court ruled otherwise in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), after finding that §§ 494.031(2) and 497.130, RSMo 1979, were unconstitutional as implemented in Jackson County, Missouri. Dictating the result was the Court's conclusion that the county's practice of liberally granting exemptions from jury duty to women who requested an exemption resulted in a serious diminution of the number of women available for jury duty and offended the "fair cross-section of the community" standard for juries enunciated in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Six days thereafter, the Court in *Lee v. Missouri,* 439 U.S. 815, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), held that the decision in *Duren* would be given retroactive effect to all juries selected and sworn under the system in Jackson County after *Taylor* in 1975. In the instant case, the jury was selected and sworn on April 24, 1978–obviously within the time frame noted.

Naturally, questions arose as to when and in what manner a person convicted by such a "suspect" jury could challenge the judgment against him.[1] In the instant case, the question is reduced to whether or not the "challenge" can be asserted as *plain error* for the first time at the appellate level. In *State v. Williams,* 595 S.W.2d 378 (Mo.App. 1980), the Western District in an opinion by

Wasserstrom, C. J., considered the identical issue and found as follows:

[Defendant] contends that it was plain error for this case to have been submitted to a jury selected by the process declared in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) to be discriminatory against women. The state seeks to distinguish *Duren* on the ground that defendant made no objection to the jury panel or its manner of selection in the trial court, and he raises this objection now for the first time on this appeal.

Prior decisions of this court have sustained objections based on *Duren* despite deficiencies in the procedure normally required for the preservation of error. Thus we have held it to be immaterial that the defendant did not introduce evidence to show the discriminatory effect of the manner in which the jury was selected during the particular year in which the case on review was tried. *State v. Beavers,* 591 S.W.2d 215 (1979); *State v. Hawkins,* 582 S.W.2d 333 (Mo. App.1979). Similarly, we have held it to be immaterial that the defendant did not insist on a ruling with respect to the motion to quash the jury panel, although such insistence is normally required. *State v. Carter,* 591 S.W.2d 219 (1979).

In *Carter,* we pointed out that the Missouri Supreme Court in *State v. Duren,* 556 S.W. 2d 11, had sustained the Jackson County method of jury selection against the contention of discrimination against women; that decision dated September 27, 1977, remained in effect and binding upon all lower Missouri courts until January 9, 1979, when *Duren* was reversed by the United States Supreme Court; and that any challenge against jury venires in Jackson County on the basis of female discrimination were foredoomed to being overruled by the trial court during the period between those two decisions. We held in *Carter* (in which the trial occurred

---

1. Representative cases include: *State v. Phillips,* 596 S.W.2d 752 (Mo.App.1980); *State v. Beavers,* 591 S.W.2d 215 (Mo.App.1979); *State v. Mountjoy,* 585 S.W.2d 98 (Mo.App.1979); *State v. Williamson,* 584 S.W.2d 628 (Mo.App. 1979); *State v. Coleman,* 582 S.W.2d 335 (Mo. App.1979); and *State v. Hawkins,* 582 S.W.2d 333 (Mo.App.1979).

during the interval between the Missouri Supreme Court and the United States Supreme Court's *Duren* decisions) that "there was no real point in his [the defendant] pressing for a formal ruling on the motion, and the trial court was not deprived of any opportunity for an exercise of judgment when defense counsel failed to do so. The entry of an order on the motion would have been the sheerest of formality. The failure of defense counsel to insist on that ritualistic gesture should not be branded as an abandonment or incur the penalty of his client's forfeiture of a constitutional right."

The same considerations stated above in *Carter* apply also here. This case was tried in September 1978, during the interval between the Missouri Supreme Court and the United States Supreme Court's *Duren* decisions. Just as it would have been a mere ritualistic gesture for the defendant in *Carter* to have pressed for a ruling on his motion to quash the jury panel, so also it would have been equally a mere ritualistic gesture for this defendant to have pursued a motion to quash the jury panel. Any such motion was foredoomed to failure at the trial level. The trial court at the time this trial was held had no choice other than to follow the Missouri Supreme Court's *Duren* opinion. As in *Carter*, so also here the failure of the defendant's counsel to do a useless act should not incur the penalty of his client's forfeiture of all constitutional rights.

Indeed, even if we were to hold defendant barred procedurally from raising the *Duren* question on this direct appeal, he could still file a motion under Rule 27.26 alleging that such loss of this point on direct appeal resulted from ineffective assistance of counsel. The same counsel on this appeal handled the trial, and he made it clear in oral argument before this court that he would have to confess ineffectiveness in failure to preserve the *Duren* point at the trial level. No reason can be perceived why the *Duren* point should be passed over now, only to be sustained after the unnecessary expenditure of time, money and judicial resources in a 27.26 proceeding.

We are aware that in *State v. Williamson*, 584 S.W.2d 628 (Mo.App.1979), this court refused to apply *Duren* where the defendant did not file a timely motion to quash the jury panel. However, the defendant in that case did not argue for the application of *Duren* on the basis of the plain error doctrine, and no consideration was given to that doctrine by the *Williamson* decision. We are also aware that in *State v. Mountjoy*, 585 S.W.2d 98 (Mo. App.1979), this court declined to apply *Duren* where the defendant had not raised the issue before the trial court by timely motion to quash the panel, even though the defendant there did ask for this relief under the plain error rule. However, that ruling in *Mountjoy* is to be read in the light of the fact that Mountjoy was tried in February 1977, prior to the Missouri Supreme Court *Duren* decision. Therefore, the application of *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, was still an open question in Missouri at that time. Unlike the situation in the present case, it would not have been a mere gesture empty of meaning for Mountjoy's counsel to have raised properly the constitutional objection. Accordingly, *Mountjoy* does not stand as a barrier to the treatment of the constitutional issue as plain error here. Consistent with so doing is the statement of this court in *Hawkins, supra,* where we held: "The matter pertaining to the *Duren,* supra, question, being one of constitutional nature, may and should be considered by this Court *sua sponte* as plain error under Rule 27.20(c). [citing cases]."

The trial and submission of this case to a jury selected in a manner contrary to *Duren* constituted plain error which requires a reversal of the convictions and remand for new trial.

*Id.* at 379.

The logic of the reasoning in *Williams* is obvious and we not only approve thereof

but find the same applicable to the instant case. The mandate of *Duren v. Missouri*, 439 U.S. 359, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), necessarily, must take precedence over established relevant procedural rules, regardless of the extent to which the latter contribute to the orderly administration of justice.

On retrial, if any, other issues presented may or may not arise and nothing could be gained by further discussion at this time.

The convictions having been returned by a jury improperly selected cannot stand, and the judgment entered thereon must be and hereby is reversed; and, the cause is remanded for further proceedings.

DONNELLY, SEILER, WELLIVER and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

I disagree with the holding of the principal opinion which, following *State v. Williams*, 595 S.W.2d 378 (Mo.App.1980), holds that *every* defendant who was convicted in a jury–tried criminal case in Jackson County from the date of *State v. Duren*, 556 S.W.2d 11 (Mo.banc Sept. 27, 1977), to *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), is entitled to a new trial. The principal basis for my position is that the issue of the extent of retroactivity to be afforded *Duren v. Missouri, supra*, was considered and decided in *Lee v. Missouri*, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), and in *Harlin v. Missouri*, 439 U.S. 459, 99 S.Ct. 709, 58 L.Ed.2d 733 (1979), and neither case mandates the retroactivity required by the principal opinion in this case.

In *Harlin v. Missouri, supra*, the United States Supreme Court held the petitioner was entitled to the benefits of *Duren*. *Harlin* did not raise the objection in timely

fashion but the trial court did consider and reject the contention ,on the merits in connection with petitioner's motion for new trial and, on appeal, this Court reviewed the issue under our "plain error" rule and rejected the contention *on the merits* for the reasons stated in *State v. Duren, supra*. This rendered our decision subject to review by the United States Supreme Court and resulted in reversal. 439 U.S. at 459–460, 99 S.Ct. at 709–710.

In *Lee v. Missouri, supra*, the United States Supreme Court held *Duren* to be applicable to petitioner Lee and other‑named petitioners noting that in each case the trial court denied a timely motion to quash the jury panel, and on appeal the convictions were affirmed on the basis of *State v. Duren*, 556 S.W.2d 11. With respect to the retroactivity of *Duren*, the Court stated, 439 U.S. at 462, 99 S.Ct. at 711:

> . . . The State of Missouri has urged that our decision in *Duren* not be applied retroactively to petitioners or appellants other than Duren himself. However, because that decision does not announce any "new standards" of constitutional law not evident from the decision in *Taylor v. Louisiana*, the considerations that have led us in other cases to depart from full retroactive application of constitutional holdings, see, e. g., *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), are inapplicable to juries sworn after the decision in *Taylor v. Louisiana*. Compare *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), holding *Taylor v. Louisiana* inapplicable to cases in which the jury was sworn prior to the date of that decision.

> *We note that in any case in which a jury was sworn subsequent to Taylor v. Louisiana and the fair–cross–section claim based on exclusion of women was rejected on direct review or in state collateral proceedings because of the defendant's failure to assert the claim in timely fashion, relief is unavailable under 28 U.S.C. § 2254 unless the petitioner can*

*show cause for having failed to raise his claim properly in the state courts.* See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). (Emphasis added.)

In the instant case there was no objection to the venire or the jury at the outset of the trial or in the motion for new trial. The point has been raised for the first time on appeal. I would reject the point on this direct review because of defendant's failure to assert the claim in timely fashion. Under *Lee v. Missouri, supra,* the holding of *Duren v. Missouri, supra,* is not applicable to this case.

Further adhering to *Lee v. Missouri, supra,* I would overrule *State v. Williams,* 595 S.W.2d 378 (Mo.App.W.D. 1980), to the extent that it exceeds the bounds of retroactivity required of *Duren v. Missouri, supra,* by *Harlin* and *Lee.*

Nor do the issues decided in *Duren v. Missouri, supra,* require retroactivity beyond that required by *Harlin* and *Lee.* Retroactive application of a rule is required where the rule goes to the integrity of the fact–finding process. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *See also Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The underrepresentation of women on jury venires does not go to the integrity of the fact–finding process. Persons convicted by juries in Jackson County prior to 1979 were not unfairly convicted because of the underrepresentation of women on jury venires. The refusal of the United States Supreme Court in *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), to apply *Taylor* retroactively attests to this view.

In *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the United States Supreme Court stated at 32–33, 95 S.Ct. at 705:

> ... In *Taylor,* as in *Ducan,* we were concerned generally with the function played by the jury in our system of criminal justice, more specifically the function of preventing arbitrariness and repression. *In Taylor, as in Duncan, our deci-*

*sion did not rest on the premise that every criminal trial, or any particular trial, was necessarily unfair because it was not conducted in accordance with what we determined to be the requirements of the Sixth Amendment. ...* Here, as in *Ducan,* the requirement of retrying a significant number of persons were *Taylor* to be held retroactive would do little, if anything, to vindicate the Sixth Amendment interest at stake and would have a substantial impact on the administration of criminal justice in Louisiana and in other States whose past procedures have not produced jury venires that comport with the requirement enunciated in *Taylor.* (Emphasis added.)

The Court nevertheless afforded a limited retroactive effect to *Duren* in *Lee,* as set forth supra in the quotation from *Lee.* As indicated, in view of the nature of the issues as described in *Daniel,* I would not expand retroactivity beyond that required by *Lee* and *Harlin.* In my opinion, the retrial of all cases in Jackson County, which includes the second largest city in Missouri, for the period indicated in the principal opinion is not warranted, *Daniel v. Louisiana, supra,* but to the extent required by *Lee* and *Harlin* will be afforded.

I would reject the *Duren* point in this case as one not preserved for review and not constituting plain error and would not consider the point "on the merits".

In view of the foregoing I regard the impact retroactivity would have on the judicial system in cases where the challenge was not timely made is unjustifiable and not required by the controlling decisions of the United States Supreme Court except to the extent set forth in *Lee* and *Harlin.*

I therefore dissent but do not reach the other points on appeal at this time.