STATE of Missouri, Respondent,

v.

Dwight BAKER, Appellant.

No. 62149.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1980.

Patrick E. White, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Darrell Panethiere, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Dwight Baker was convicted by a jury of first degree murder for the killing of Paula Campbell in an attempted robbery of Ernest Campbell (no relation to Paula); first degree robbery of Janice McCormick; second degree burglary of Ernest Campbell's dwelling house; and assault of Ernest Campbell with intent to do great bodily harm without malice. The trial court fixed defendant's punishment as a second offender at imprisonment for life for the murder, fifteen years for the robbery, ten years for the burglary, and five years for the assault. Sentences and judgment were rendered accordingly with the sentences to run concurrently.

The court of appeals reversed the murder conviction on a determination that the evidence did not establish a case of first degree murder under § 565.003, RSMo 1978. It also reversed and remanded the remaining convictions because of a deficiency in the Jackson County jury panel selection procedure. This Court transferred the case to review principally whether defendant was properly convicted of first degree murder for the death of his accomplice in an attempted robbery when the fatal shot was

fired by the intended robbery victim. Considered also is the jury selection procedure and the sufficiency of evidence to support the robbery conviction. This Court finds the questioned convictions supported,[1] but reverses and remands the case for new trial because all convictions were returned by an improperly selected jury panel.

At about 12:30 A.M., December 27, 1977, Janice McCormick returned to her Kansas City residence which she shared with the owner, Ernest Campbell. Upon entering the house Paula Campbell and an unidentified man accosted her and asked her where the money was. She told them that Ernest Campbell had all the money and some expensive jewelry with him. They searched her at gunpoint and took jewelry and $40.00 in cash from her. After kicking, striking, tying, and blindfolding her, they dragged her into a bedroom where she remained while the house was ransacked. Subsequently the telephone rang. Believing that this was Ernest Campbell calling to check on Janice, the intruders dragged her into the kitchen where she could reach the telephone. She was instructed that if he called again, she was to tell him that the house had been robbed, that the police had already been there, and that she was scared and wanted him to come home. When Ernest Campbell subsequently called, Janice relayed the message. She also warned him by a prearranged signal that something was wrong.

Fifteen to twenty minutes after the call, sometime after 3:00 A.M., Ernest Campbell arrived home accompanied by a friend, Clifford Scott. Upon entering the house, Ernest walked across the living room in the direction of a bar. When Ernest was within three feet of the bar, defendant rose from behind it and fired a shotgun at him. Ernest returned the fire with a pistol. Defendant ran from behind the bar, and he and Ernest struggled to the door where

Scott joined the scuffle. The struggle progressed into the front yard; Scott grabbed the shotgun and struck defendant; defendant fled on foot.

As Ernest opened the door to reenter the house he was fired upon again. He went outside and saw an unidentified man flee from the rear of the house.

Ernest returned to the house and found Janice McCormick on the floor of one of the bedrooms. He went to check the rest of the house. As he proceeded to the kitchen he heard someone move behind him, turned, and fired twice. One of the shots struck and killed Paula Campbell.

Appellant contends the evidence does not support his conviction of first degree murder under § 565.003 because Ernest Campbell, who fired the fatal shot, was not acting in concert with him, but was an outside agency or intervening cause of the death of the victim, and because he had fled and abandoned the robbery attempt at the time of the shooting. He also contends that the information and verdict directing instruction varied from the evidence.[2]

Section 565.003 provides:

First degree murder defined.—Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping.

Defendant relies on and the court of appeals followed *State v. Light*, 577 S.W.2d 134 (Mo.App.1979). Defendant Light and an accomplice were attempting to steal wire from a power pole, a misdemeanor. The accomplice came into contact with the live power wire and was electrocuted. The court compared its misdemeanor–manslaughter situation to felony–murder and

---

1. Sufficiency of evidence to support the burglary and assault convictions is not in question.

2. The information charged defendant with murder for the killing of Paula Campbell during the perpetration of a robbery. Instruction number

7 charged the jurors that if they found that defendant and others caused Paula Campbell's death in robbing or attempting to rob Ernest Campbell, they would find defendant guilty of murder in the first degree.

reversed defendant's manslaughter conviction on a determination that:

> [A] *combination* of two factors will lead to the result that the court will not invoke the felony–murder doctrine. These factors are:
>
> 1. The decedent was a willing participant in the underlying felony; and
>
> 2. The death was caused by an outside agency, human or natural, which had the effect, calculated or accidental, of thwarting rather than furthering the commission of the underlying felony.
>
> *Id.* at 139.

*State v. Moore*, 580 S.W.2d 747 (Mo.banc 1979), was decided four months later. Defendant Moore and his accomplices entered a tavern armed with weapons with intent to rob the bartender. After announcement of the holdup a customer pulled a pistol, and when one of the accomplices fired at him, he returned the fire. In the ensuing gunfight another customer was killed by a bullet from the resisting customer's pistol. The defendant appealed his first degree murder conviction contending that it was error to submit the case as a felony–murder because the bystander killed during the attempted robbery was not shot by defendant, but by another bystander. This Court affirmed the conviction applying a foreseeability–proximate cause concept of homicide responsibility: [3]

> It was reasonably foreseeable that the robbery attempt would meet resistance. This set into motion the chain of events which caused the death of [the bystander]. Whether the fatal act was done by the defendant, an accomplice, another victim, or a bystander is, under the facts here, not controlling. The significant factor is whether the death was the natural and proximate result of the acts of the appellant or of an accomplice. Of course, an independent intervening cause might relieve appellant of criminal responsibility for the killing.
>
> *Id.* at 752.

**3.** See Annot., 56 A.L.R.3d 239 (1974), for a collection of cases concerning criminal liability where the act of killing was done by one resist-

Thus, under *State v. Moore, supra*, it is of no concern that the fatal shot was fired by a person acting to thwart rather than further the commission of the underlying felony unless the act of the person directly causing the death was an independent intervening cause. In *State v. Moore, supra*, the act of the resisting bystander in shooting another bystander was not an independent act because it was the attempted robbery which provoked the resisting bystander to pull the pistol, and it was the shot fired by one of the felons which provoked the fatal return fire.

An innocent bystander rather than an accomplice was killed in *State v. Moore, supra*, but the identity of the deceased is not a factor affecting the criminal responsibility of a defendant under a felony murder charge. As stated in *People v. Washington*, 62 Cal.2d 777, 402 P.2d 130, 132–133, 44 Cal.Rptr. 442, 444–445 (1965):

> A distinction based on the person killed . . . would make the defendant's criminal liability turn upon the marksmanship of victims and policemen. A rule of law cannot reasonably be based on such a fortuitous circumstance.

See also *State v. Blackmon*, 587 S.W.2d 292 (Mo.App.1979), where, although not an issue, the victim of the felony–murder was an accomplice.

To the extent *State v. Light, supra* is inconsistent with *State v. Moore, supra*, and this case, it is not to be followed.

The evidence shows that the death of Paula Campbell was the natural and proximate result of the acts of defendant and his accomplices. Therefore the information and instruction to that effect cannot be at variance with the evidence. Defendant fired a shotgun at Ernest Campbell; Campbell returned the fire. The attempted robbery was foiled and defendant ran from the scene. Ernest Campbell was fired at again by an accomplice of defendant. Thereafter, having already been fired upon by defendant and an accomplice, Ernest

ing a felony or other unlawful act committed by defendant.

was startled by a noise, turned and fired, killing defendant's accomplice, Paula Campbell. It was defendant who initiated the gunfire and who set into motion the chain of events which caused Paula Campbell's death. The shooting of Paula Campbell by Ernest Campbell was not an independent intervening cause because it was the shots fired by the felons that provoked Ernest's reaction of shooting after being startled.

■ Section 565.003 requires the killing to have been committed in the perpetration of or attempt to perpetrate one of the five named felonies. If the killing emanated from the attempted robbery, it was committed in the attempt to perpetrate robbery in the statutory sense. The statutory requirement is satisfied because the attempted robbery and the killing were parts of "one continuous transaction, and were closely connected ... in time, place and causal relation ...." *State v. Adams*, 339 Mo. 926, 933, 98 S.W.2d 632, 637 (1936).

■ To withdraw in the legal sense defendant must have done so in due time, he must have shown his confederates by acts or words that he disapproved or opposed the contemplated crime, and he must have done everything practicable to detach himself from the criminal enterprise and to prevent the consummation of the crime. *State v. Bailey*, 383 S.W.2d 731, 734 (Mo. 1964); *State v. Denson*, 574 S.W.2d 445, 448 (Mo.App.1978). Once defendant set into motion the chain of events leading to Paula Campbell's death, he could not absolve himself from the consequences of his actions by simply running away from the scene of his crime. See *State v. Glover*, 330 Mo. 709, 50 S.W.2d 1049 (1932); *State v. Forsha*, 190 Mo. 296, 88 S.W. 746 (1905).

■ Defendant contends also that the evidence was insufficient to establish his presence or participation in the robbery of Janice McCormick. He argues that Janice testified that an unidentified man and a woman robbed her, and the evidence establishes only that he was present at the scene three hours after the robbery of Janice McCormick.

Although Janice McCormick could testify that only two people were present when she was bound and blindfolded, there were three people present at the time Ernest Campbell arrived. Defendant was one of those present, and he acted in a manner consistent with the direction given to Janice McCormick a short time before to lure Ernest to their house. There is nothing in the evidence to indicate that anyone had left or entered the premises between the time of the robbery and Ernest Campbell's arrival. When the shooting started, Paula Campbell untied Janice McCormick and told her "to tell them that she didn't have anything to do with it, that they had forced her into it." Viewed in the light most favorable to the state, such facts and the inferences to be drawn from them support a finding of defendant's presence at and participation in the robbery of Janice McCormick.

■ Appellant asserts as plain error under Rule 84.13(c) that the Jackson County jury panel selection procedure outlined in § 497.130, RSMo 1978, and disapproved in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), requires reversal of his convictions. *State v. Johnson*, 606 S.W.2d 624. (Mo.banc 1980) settled this question and requires reversal of these convictions and remand for new trial because the case was tried in April, 1978, during the period of proscribed infirmity of Jackson County juries.

Defendant also assigns error to failure to instruct the jury on second degree murder, manslaughter and common assault; failure to exclude an undisclosed photograph; failure to exclude testimony pertaining to hair samples; and rulings on the closing arguments. These matters are adequately covered by present case law and the briefs and may not arise on retrial. Further discussion at this time is not necessary.

The judgment is reversed and the cause is remanded for new trial.

DONNELLY, SEILER, WELLIVER and MORGAN, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, dissenting.

The convictions in the instant case are being reversed and the cause remanded for a new trial because of an improper Jackson County jury panel selection procedure which was the subject of *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In *State v. Johnson*, 606 S.W.2d 624 (Mo.banc 1980), this Court essentially adopted the opinion of the Missouri Court of Appeals, Western District, in *State v. Williams*, 595 S.W.2d 378 (Mo.App.1980), which involved the same question as is presented here.

For the reasons stated in my dissenting opinion in *State v. Cornelius Johnson, supra*, I dissent from the principal opinion in this case. I continue to believe that under the controlling decisions of the United States Supreme Court we are not required to reverse and remand a conviction for a new trial because of error in the jury selection process as occurred in this case where no objection was made either during the trial or in after–trial motions. I would overrule the *Duren* issue in this case.