

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD75622** |
| | ) | |
| **v.** | ) | **OPINION FILED:  July 15, 2014** |
| | ) | |
| **CARLTON L. MANUEL JR.,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Robert M. Schieber, Judge

Before Special Division:  Lisa White Hardwick, Presiding Judge, Karen King Mitchell,
Judge and Cynthia L. Martin, Judge

Carlton Manuel, Jr. ("Manuel") appeals his conviction of second-degree (felony) murder and armed criminal action following a jury trial.  Manuel seeks plain error review of a claim of instructional error, and argues that there was insufficient evidence to prove that the victim was killed in the perpetration or attempted perpetration of a felony.  We disagree and affirm Manuel's conviction.

## Factual and Procedural Background[1]

Lee Zemke ("Zemke") and Denise Peterson ("Peterson") wanted to buy crack cocaine. Peterson called Manuel to arrange to buy drugs. Peterson and Zemke then drove to the sale location. Zemke drove, while Peterson sat in the front passenger seat and spoke with Manuel on the phone to get directions. After some initial difficulty, Zemke and Peterson arrived at the designated sale location near 54th Street and Wayne. Peterson said: "There they are. There they are," when she spotted Manuel and another male standing by the side of the road.

Manuel approached the passenger side of the vehicle and spoke with Peterson. Manuel asked how much crack she and Zemke wanted. Zemke said, "Fifty," which was about a half of a gram. Manuel handed Peterson a baggie. Peterson handed the baggie to Zemke, who was concerned that the crack looked fake. Zemke handed the baggie to Peterson and said, "No." Peterson asked Zemke if she should try it, and he replied, "Do what you want." Manuel broke off a piece, and gave it to Peterson. Peterson put the piece into a crack pipe and tried to smoke it, but it did not start to melt as it should.

Zemke said, "We're out of here," and started to drive off. Zemke heard at least five gunshots and felt the car get hit several times. Zemke stopped the car several blocks away near 51st Street and Woodlawn. He saw that Peterson had been shot. There was blood on the back of her head and she was catatonic. Though Zemke had a cell phone, he went to nearby houses to find someone who could call for help.

---

[1]We view the evidence in the light most favorable to the jury's verdict. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998).

Police responded to the scene and arranged to transport Peterson to the hospital. In their investigation, the police located the shooting scene. There they found 12 CVC 9mm Luger cartridge shells and two bullet fragments. The police observed bullet holes in Zemke's car, and that the back window had been shot and shattered. A bullet jacket was found in the back of Zemke's car.

Zemke initially lied to the police about the circumstances of the shooting, and reported that he and Peterson had been shot at after leaving a store. After Peterson died, Zemke said he "couldn't lie anymore" and told the police that he and Peterson had been attempting to buy crack cocaine. The police ultimately located Manuel through Peterson's cell phone.

Manuel initially denied any involvement in, or knowledge of, the crime. He later told police that he had set up the drug buy for Peterson, but was not present at the scene. Still later, he admitted to police that he was at the scene and "made the deal," but that an accomplice[2] started shooting at Zemke's car when it took off.

Manuel was charged with second-degree (felony) murder and armed criminal action, and was convicted as charged. He was sentenced to concurrent terms of twenty years for murder and five years for armed criminal action. Manuel filed this timely appeal.

---

[2]Manuel initially gave the police his accomplice's name, but then changed his story the next day and told the police that the accomplice was his brother, Antonio.

**Analysis**

Manuel raises two points on appeal. First, Manuel seeks plain error review of a claim that the verdict director for felony murder was legally erroneous because it failed to tender each of the essential elements of the crime. Second, Manuel claims that there was insufficient evidence to convict him of felony murder because the jury could not have concluded beyond a reasonable doubt that Peterson was shot "in the perpetration of" or "in the flight from the perpetration of" the underlying felony of attempted sale of a controlled substance.

*Point One*

Manuel complains that Instruction No. 5, the verdict director for felony murder, failed to submit all of the essential elements of the crime. The State proffered the verdict director for felony murder, and Manuel's counsel stated that he had no objection to the instruction. Manuel thus concedes that his allegation of error regarding the instruction is not preserved for appellate review. *State v. Vaughn*, 11 S.W.3d 98, 105 (Mo. App. W.D. 2000) (holding that the failure to object to an instruction constitutes a waiver of error). He nonetheless requests that we review the instruction for plain error pursuant to Rule 30.20.[3] *State v. Wurtzberger*, 40 S.W.3d 893, 897-98 (Mo. banc 2001) (holding that neither failure to object to an instruction, nor an express statement of "no objection" to an instruction, waive plain error review pursuant to Rule 30.20).

---

[3]Rule 30.20 provides in pertinent part that "plain errors affecting substantial rights may be considered in the discretion of the [appellate] court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

4

Instructional error seldom rises to the level of plain error. *State v. Oudin*, 403 S.W.3d 693, 697 (Mo. App. W.D. 2013). "To show that the trial court 'plainly erred' in submitting an instruction, the defendant 'must go beyond a demonstration of mere prejudice,' and must establish that the trial judge so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice." *State v. Hill*, 970 S.W.2d 868, 872 (Mo. App. W.D. 1998) (quoting *State v. Davidson*, 941 S.W.2d 732, 736 (Mo. App. E.D. 1997) (citation omitted)). "An appellate court is 'warranted in adopting a more practical view of the result' of the instructional error." *Id*. (quoting *State v. Howard*, 896 S.W.2d 471, 494 (Mo. App. S.D. 1995).

Here, there is no dispute that the verdict director was in accord with MAI-CR3d 314.06, the applicable pattern instruction. Manuel acknowledges that where there is an applicable MAI-CR instruction, it is to be given to the exclusion of any other instruction. *State v. Altaffer*, 23 S.W.3d 891, 895 (Mo. App. S.D. 2000). Though it seems counter-intuitive to suggest that a trial court can commit "plain error" when it submits an instruction that must be given, we have nonetheless held that a pattern instruction that is not in "proper form" because it fails to comport with the substantive law can be the subject of plain error review. *State v. Beck*, 167 S.W.3d 767, 777-78 (Mo. App. W.D. 2005) (overruled on unrelated grounds by *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012) (citing *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997)).

Manuel contends that the applicable pattern instruction for felony murder, MAI-CR3d 314.06, conflicts with the substantive law because it fails to require the jury to find

5

each of the essential elements of the crime. Section 565.021.1(2),[4] the felony murder

statute, provides in pertinent part that:

> A person commits the crime of murder in the second degree if he: . . . (2) Commits or attempts to commit any felony, ***and in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony*** or immediate flight from the perpetration of such felony or attempted perpetration such felony.

(Emphasis added.) It is not in contest that this statute requires the essential elements of

the commission or attempted commission of a felony, and a death. The issue in this case

is what essential element or elements are created by the italicized language in the statute.

Manuel argues that the italicized language of the statute creates two discrete essential

elements of felony murder: a temporal element (that a killing occurs *while* and thus

*during* the time the essential elements of a felony or its attempt are being perpetrated, or

*while* or *during* the immediate flight therefrom), and a causation element (that a killing

occurs *as a result* of the felony, its attempt, or the immediate flight therefrom). Manuel

cites no authority for his construction of the statute.

Manuel nonetheless employs his novel construction of section 565.021.1(2) to

attack the verdict director which instructed the jury as follows:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that defendant committed attempted sale of a controlled substance as submitted in Instruction No. 6, and

> Second, that Denise Peterson was killed by being shot, and

---

[4]All statutory references are to RSMo 2000 as supplemented unless otherwise expressly noted.

6

Third, that Denise Peterson was killed as the result of the perpetration or immediate flight from the perpetration of that attempted sale of a controlled substance,

then you will find the defendant guilty under Count I of Murder in the Second Degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Manuel argues that the verdict director failed to comport with the substantive law because although it tendered the "causation" element of the crime of felony murder by requiring the jury to find that Peterson was killed "as the result of" the perpetration or flight from the perpetration of the underlying felony, it failed to tender the "temporal" element that Peterson was killed "while" the essential elements of the felony or its attempt were being perpetrated, or "while" in flight therefrom. Manuel argues that this was a manifest injustice because the jury was never required to address his defense that Peterson was shot *after* Manuel's commission of the essential elements of the underlying felony were complete, and not during any flight from the felony.[5]

Manuel's construction of section 565.021.1(2) would thus permit felony murder to be charged if a death occurs *while* the essential elements of a felony or its attempt are being performed, or *while* flight from the felony or its attempt is underway, but never *after* the essential elements of a felony or its attempt have been completed except during

---

[5]Manuel argued that Zemke was not fleeing Manuel's commission of a felony, but was instead committing his own crime--theft of Manuel's drugs. Because we otherwise reject Manuel's construction of section 565.021.1(2), we need not address whether the flight of a victim, as opposed to the perpetrator of a felony or its attempt, is within the scope of the statute's reference to flight or is instead an act or consequence reasonably attendant to the commission of the underlying felony or its attempt.

7

flight. Stated differently, Manuel's construction of the statute would require us to conclude that the phrase "in the perpetration or the attempted perpetration of such felony" must be read independently from the phrase "as a result of the perpetration or attempted perpetration," resulting in the need to overlay the temporal reference and the causal reference to demarcate discrete windows of time within which felony murder can be charged.

We conclude that Manuel's construction of section 565.021.1(2) is flawed. "The Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *State ex rel. Union Elec. Co. v. Public Service Com'n of State*, 399 S.W.3d 467, (Mo. App. W.D. 2013 (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). Section 565.021.1(2) requires the killing of another person "***in the perpetration*** or the attempted perpetration of such felony ***or in the flight from the perpetration*** or attempted perpetration of such felony." (Emphasis added.) Flight from a felony or its attempt is not a separately chargeable offense, nor an essential element of most (if any) felonies. Rather, flight by the perpetrator of a felony necessarily occurs *after* the essential elements of the underlying felony have been committed. This strongly suggests that the legislature did not intend the phrase "in the perpetration or the attempted perpetration" to include only the time frame within which the essential elements of an underlying felony are performed. Instead, we believe that the legislature intended the phrase "in the perpetration or the attempted perpetration" to broadly encompass a continuum from the point where the commission of a felony begins through the point where all other acts or

8

consequences reasonably associated with the felony have occurred including, but not limited to, flight.

We thus conclude that the essential elements of felony murder created by section 565.021.1(2) are the commission or attempted commission of a felony, a death, and a proximate relationship between the death and the commission or attempted commission of the underlying felony. In fact, Missouri courts have consistently construed the language in section 565.021.1(2) on which Manuel relies to urge a "temporal" element as imposing only the obligation to prove that each of the essential elements of the underlying felony were committed, and not that a death occurred *while* those elements were being committed.

> The [S]tate must prove every element of the underlying felony beyond a reasonable doubt. This is because the underlying felony is necessary in proving the intent element of felony murder. The felony murder rules make the underlying felony not an element of the felony murder, but a means of proving felonious intent for murder.

*State v. Gheen*, 41 S.W.3d 598, 605 (Mo. App. W.D. 2001) (internal citations omitted). Thus, to support a conviction for felony murder, it need only be shown that: (i) the evidence was sufficient for a finding beyond a reasonable doubt that the defendant committed the underlying felony offense, and (ii) another person died as a result of the perpetration or flight from perpetration of that felony. *State v. Agee*, 350 S.W.3d 83, 92 (Mo. App. S.D. 2011); *Stallman*, 289 S.W.3d at 779 ("A person is guilty of second-degree felony murder if he commits any felony and, in the perpetration of that felony, another person is killed as a result of the perpetration of that felony.").

9

We thus reject the premise of Manual's claim of instructional error. We do not believe the legislature intended to parse the concept of "in the perpetration" so finely as to excuse deaths that plainly occur as a result of the commission of a felony or its attempt, but just happen to occur after the essential elements of the felony or its attempt have been completed, but not during flight from the offense. It would be absurd to conclude that the legislature intended to attach felony murder consequences to flight but not to other acts or consequences reasonably attendant to a completed underlying felony. Statutory construction "should avoid unreasonable or absurd results." *Reichert v. Bd. of Educ. of St. Louis*, 217 S.W.3d 301, 305 (Mo. banc 2007).

We therefore conclude that the verdict director in this case (which was patterned after MAI-CR3d 314.06) comports with the substantive law. It tendered in paragraph first the requirement that Manuel committed the underlying felony of attempted sale of a controlled substance, in paragraph second that a person died, and in paragraph third that the death was a result of perpetration or immediate flight from the perpetration of the underlying felony of attempted sale of a controlled substance. *Agee*, 350 S.W.3d at 92.

We are not dissuaded in our conclusion by the hypothetical scenarios set forth in Manuel's brief. In stressing that section 565.021.1(2) establishes a temporal element distinct from the causation element, Manuel argues that if a bank roof collapses and kills a bystander during a bank robbery, the killing will have taken place *while* the robbery was underway, but not *as a result* of the robbery. And he argues that if the purchaser at a drug sale is killed the next day by one of the sellers because of a dispute involving the sale, the killing will have been *as a result* of the sale but not *while* the sale was underway.

10

These extreme hypothetical situations are not implicated by the facts in this case. More to the point, it is implausible that the State would charge a defendant with felony murder under either scenario. Our courts have long employed a "foreseeability-proximate cause concept of homicide responsibility" in felony murder cases, rendering Manuel's hypothetical scenarios unrealistic. In neither hypothetical can it be reasonably said that the death of another was proximately related to commission of the underlying felony. *See, e.g., State v. Baker*, 607 S.W.2d 153, 156 (Mo. banc 1980) (citing *State v. Moore*, 580 S.W.2d 747, 752 (Mo. banc 1979)).[6]

Manuel's hypothetical scenarios actually implicate the longstanding principle that if the death of another is the result of an independent intervening cause, it cannot be said to naturally and proximately result from the act of a defendant. *Baker*, 607 S.W.2d at 156-57. Here, Manuel's counsel took full and proper advantage of the defense of "independent intervening cause." He argued that the felony Manuel committed--the attempted sale of crack cocaine--was completed before the shooting, and that Zemke's flight from the scene for the arguable purpose of stealing the crack he and Peterson never paid for was the "cause" of Peterson's death. Manuel's counsel argued that:

> Mr. Manuel handed the requested product to Ms. Peterson through the open
> front window. The transaction described in Instruction No. 6 had occurred

---

[6]*Baker* addresses an earlier version of the felony murder statute in effect until 1983, section 565.003. 607 S.W.2d at 157. In that version of the statute, felony murder required a "killing to have been committed in the perpetration of or attempt to perpetrate one of five named felonies." *Id.* This language is essentially identical to the language in section 565.021.1(2) on which Manuel relies to urge a restrictive temporal element. Significantly, in *Baker*, an accomplice was killed after the attempted robbery was completed, and after the defendant had fled from the scene. *Id.* at 155. The defendant argued that the evidence was not sufficient to support his conviction of felony murder because the person who killed the accomplice "was an outside agency or intervening cause of the death of the [accomplice], and "because he had fled" at the time of the shooting. *Id.* Our Supreme Court rejected the defendant's argument in *Baker*.

11

and it was completed at that moment. He had delivered the alleged controlled substance.

. . .

Now, after the delivery is done, completed, exchanged, [Zemke's car], Mr. Zemke, Ms. Peterson, the pipe Ms. Peterson used to sample the product left the scene rapidly. Next Mr. Manuel's acquaintance apparently pulled out a small black pistol and began firing.

. . .

Mr. Manuel's crime as described in Instruction No. 6 was completed. [Zemke's car] and the people in it were on their way. And only then were the shots fired by Mr. Manuel's acquaintance, after the delivery, not before, not during, but after.

. . .

I don't know if Ms. Peterson and Mr. Zemke had planned to steal drugs all along or if it was an at this very moment decision. It doesn't matter. To steal the drugs, they did, and Ms. Peterson dies as a result of that act. Not at the hand of Carlton Manuel *and not during or as a result of the commission of a criminal offence that he committed*.

(Emphasis added.) Manuel's defense was not novel. Contrary to Manuel's argument on appeal, the defense did not implicate a nonexistent essential element that a death must occur before the essential elements of the underlying felony are completed. Rather, Manuel conceded the underlying felony submitted in the first paragraph of the verdict director, and sought to negate the third paragraph of the verdict director by suggesting the underlying felony did not cause Peterson's death. The jury could have accepted this argument. Plainly, the jury was not persuaded.

Because we find no error, plain or otherwise, in the verdict director submitting felony murder, point one is denied.

12

*Point Two*

Manuel next argues the sufficiency of the evidence to convict him of felony murder, and contends the jury could not have found beyond a reasonable doubt that Peterson was killed "in the perpetration" or "in the flight from the perpetration" of Manuel's attempted sale of cocaine. Our review is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found a defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). In applying this standard, we accept as true all of the evidence favorable to the verdict, including favorable inferences reasonably drawn from the evidence, and disregard all contrary evidence or inferences. *Id*. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 52 (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

Manuel's second point on appeal depends for its merit on the assertion made in his first point on appeal--that an essential element of felony murder requires the death of another to occur "while" an underlying felony is being committed, and thus before the essential elements of the underlying felony are completed. We have already dispelled the validity of this unsupported contention.

Plainly, section 565.021.1(2) contemplates that felony murder can be charged after the underlying felony has been completed. Thus, there need only have been sufficient evidence here for the jury to conclude beyond a reasonable doubt that Peterson died as a result of the perpetration of, or flight from the perpetration of, the underlying felony. The

13

evidence permitted this conclusion beyond a reasonable doubt. Peterson was shot as Zemke sped away from the crack buy. Whether Zemke and Peterson were attempting to steal drugs from Manuel or whether Zemke simply became nervous that Manuel was attempting to pass off "fake" crack cocaine is immaterial. The attempt to sell the crack cocaine and Peterson's death "were parts of 'one continuous transaction, and were closely connected . . . in time, place and causal relation.'" *Baker*, 607 S.W.2d at 157 (quoting *State v. Adams*, 98 S.W.2d 632, 637 (Mo. 1936)).

Point two is denied.

## Conclusion

The trial court's judgment is affirmed.


_____
Cynthia L. Martin, Judge


All concur

14